WELCH & COMPANY *vs.* FORREST GREENE.

PROVIDENCE—DECEMBER 6, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1)  *Covenant.  Damages.  New Trial.  Excessive Damages.  Question for Jury.*

In an action for the breach of the covenants contained in a lease, the question of damages, on conflicting evidence, is peculiarly for the jury ; and the court will not set aside a verdict on the ground of excessive damages unless the verdict is so clearly excessive as to lead to the belief that it was not a proper and honest exercise of the judgment of the jury.

(2)  *Evidence.  Refreshing Recollection.  Memoranda.*

A witness may refresh his recollection from a memorandum made up by him from original memoranda made by him or under his direct personal supervision at the time of the transaction concerning which he is questioned, although he may not then have the original memoranda.

COVENANT.  Heard on petition of defendant for new trial, and petition denied.

TILLINGHAST, J.  This is an action of covenant, and is brought to recover damages which the plaintiffs claim to have suffered by reason of certain breaches by the defendant of the covenants contained in a lease, whereby he demised to the plaintiffs, for a term of five years, a part of the fourth floor of a building on Fountain street, in the city of Providence.

The material parts of the lease in question are as follows :

" The said lessor does hereby demise unto said lessees about twenty-four hundred square feet (2400) of floor space more or

less on the fourth floor in that certain building known as the Greene building in said Providence and contained within partitions now erected and partitions to be erected by said lessor, with power to the extent of one and a half horse power more or less as may be required to run the machines to be placed in said leased premises by said lessees, the use of the passenger elevator between the hours of seven A. M. and six-thirty P. M., and also the use of the freight elevator in the adjoining building until the use of the same shall be cut off from said lessees, in which event the said lessor hereby agrees with said lessees that he will furnish a means for the transportation of freight with power from the street floor to said leased premises as convenient and as easy of access to said lessees as said freight elevator, and the said lessor further agrees that he will keep the ceiling of said leased premises in such condition that said lessees will not be damaged by reason of dust or other substance coming through or out of said ceiling and said lessor further agrees to furnish steam heat sufficient to keep said leased premises in a comfortable living condition."

The plaintiffs commenced to occupy the leased premises on February 1, 1899, and remained there for about one year. The principal business carried on by them was the manufacture of lace curtains; and for this purpose they bought muslins, laces, and other delicate goods, which, after being cut into proper shapes and sizes, were used in making the finished product.

The plaintiffs' claim is that the defendant failed to keep his covenants in several particulars, viz.: (1) in not furnishing sufficient power; (2) in not furnishing proper elevator service; (3) in not furnishing satisfactory means for transportation of freight; (4) in not keeping the ceiling in proper condition; and (5) in not furnishing sufficient heat to keep the premises in comfortable living condition.

The plaintiffs' bill of particulars for damages thus sustained is as follows:

"*Loss from lack of agreed Elevator Service.*

Loss of time of men in receiving and ship-
ping freight, average $1 a day for 254
days, and other consequential losses.... $254 00
Extra charge, Weaver, in moving us out,
over what would have been required
with the agreed elevator service ......    14 08
Glass broken by chain hoist. ............     6 00
Gage broken by chain hoist. ............    10 75
Extra men employed in moving on ac-
count of lack of agreed elevator service.  17 00
                                          ——————  $301 83

"*Damages from failure to keep agreement to
prevent substances from coming through ceil-
ing.*

Curtains spoiled, as per bill of July 31...  $12 99
Curtains and muslins spoiled, as per bill
of November 6 ......................    54 43
Labor in cleaning goods not wholly de-
stroyed, and other damages from this
cause. .............................   100 00
Labor in making up curtains to replace
those spoiled. ......................    15 00
Cost of platform put up to protect goods..   54 25
Cost of replacing sprinklers under plat-
form. ..............................    19 50
                                          ——————  256 17

"*Damages from lack of power.*

Wages plaintiffs were obliged to pay
through help idle April 10 to April 15,
1899. ..............................   $24 00
Loss from being idle. ................    74 00
Paid help while idle from lack of power
between September 4 and 9. ..........     5 17
Paid to repair power motor. ..........     1 03
                                          ——————  104 20

*"Damages from lack of agreed heat.*

April 8 to 21st.   Loss of Labor from cold .  $50  00
Loss of. labor from cold during six weeks
 next preceding January 1, 1900, and
 other damages consequent thereon. . . . .  150  00
            ———— 200  00

"Damages in consequence of moving,
 rendered necessary by defendant's fail-
 ure to keep terms of lease. . . . . . . . . . . . . . . . . . .  315  00

                "$1,177  20"

At the trial of the case in the Common Pleas Division the jury returned a verdict for the plaintiffs for the sum of $725 damages, and the case is now before us on the defendant's petition for a new trial on the grounds (1.) that the verdict is against the evidence ; (2) that the damages are excessive ; and (3) that the court erred in refusing to admit certain testimony which was offered by the defendant, and also in admitting certain testimony offered by the plaintiffs.

The first ground of the petition is not relied on.

As to the second ground, defendant's counsel, in his brief, after carefully analyzing the testimony from his standpoint, strenuously argues that, from any fair construction thereof, the damages sustained by the plaintiffs could not have exceeded the sum of $245.   And hence he urges that the verdict rendered could only have been arrived at through prejudice and an entire disregard of the force and effect of the testimony.

The plaintiff's counsel, on the other hand, in his brief, after carefully analyzing the testimony from his standpoint, as strenuously argues that the amount of damages awarded is fully sustained by the evidence submitted.

The case being one in which there is no certain measure of damages, the court cannot disturb the verdict unless the amount awarded is so large, in view of the evidence upon which it was based, as to show that the jury must have been

influenced by prejudice or passion in rendering the same. Or, to state the rule differently, the excess must be so great as to satisfy the court that the jury were actuated by some improper motive or that they proceeded on some erroneous principle of assessment. Hilliard on New Trials, 2d ed., p. 567, § 10, and cases cited in note.

Still another way of stating the rule may be found in *Elliott* v. *Ry. Co.*, 18 R. I. 707, where Matteson, C. J., in delivering the opinion of this court, held that a new trial, based upon the ground of excessive damages, should be denied unless the verdict "is so clearly excessive as to lead us to believe that it was not a proper and honest exercise of the judgment of the jury."

In Sedgwick on Damages, vol. 2, 7th ed., p. 652, under the head of Excessive Damages, the author says: "The court holds itself at liberty to set aside verdicts and grant new trials in that class of cases where there is no fixed legal rule of compensation, whenever the damages are so excessive as to create the belief that the jury have been misled either by passion, prejudice, or ignorance. But this power is very sparingly used, and never except in a clear case." This statement of the law is abundantly sustained by the numerous cases collected in note (a) pp. 655–659. See also Am. & Eng. Ency. of Law, vol. 8, 2d ed., 629–30.

The real question in this class of cases is not whether the amount of the damages awarded by the jury is more or less than is, in the opinion of the court, proper, but whether it is shown that the jury have abused the discretion vested in them.

Upon a careful examination of the voluminous testimony submitted to the jury in the case at bar, while we are of the opinion that the damages are large, we are unable to say that they are so clearly and palpably excessive as to warrant the court in interfering therewith under any of the rules above stated.

On the part of the plaintiffs, direct and positive testimony was offered in support of every item mentioned in the bill of particulars; and, after eliminating the charges for moving

out, as the jury must have done under the direction of the
trial court, together with certain other items, amounting in
all to $377.83, there still remained charges to the amount of
$799.37 in support of which testimony was offered. The
jury cut down this amount to $725, and rendered a verdict
for this sum. And we fail to find that we could properly
eliminate any of the items upon which the jury were allowed
to pass, or that we should know where to draw the line in
diminution of the verdict. It is one of those cases in which,
in all human probability, no two juries or no two courts
would ever arrive at the same conclusion on the question of
damages; and, hence, it is one where the decision of the tri-
bunal whose special province it is to decide such questions
should be final unless clearly and palpably wrong. Further-
more, the case is one in which the evidence was very conflict-
ing, and hence peculiarly within the province of the jury to
decide.

As a particular discussion of the testimony submitted would
serve no useful purpose, and as the jury were in a much better
position than we are to carefully weigh and consider the same,
and, moreover, as there was evidence which, if believed by
them, was sufficient to support their finding, we refrain from
any further consideration of this branch of the case.

(2) The first exception relied on in support of the third ground
for a new trial is based upon the ruling of the trial court
whereby John M. Welch, one of the plaintiffs, was permitted
to refresh his recollection, as to the items of damages sus-
tained by the failure of the defendant to perform the cove-
nants in the lease, by referring to a memorandum which he
had previously made. It appeared that this memorandum
was made up by him from certain original memoranda made
by him, or under his direct personal supervision, at the times
when the injuries complained of were received. The witness
did not then have said original memoranda. It is a well-
settled rule of evidence that a witness may refresh his mem-
ory by referring to a writing or other record or document as
a memorandum. In Abbott's Trial Ev., 2d ed., 395, the
author gives the following as one of the cases in which this

may be done. "If the memorandum was made by himself or by another person at his dictation, at the time of the transaction concerning which he is questioned, or so soon afterwards that the judge considers it likely that the transaction was at the time fresh in his memory ; or if made by any other person, and read by the witness within the same limits as to time, and if when he read it he knew it to be correct. If the witness testifies that he knew the writing to be correct at the time he made it or read it, the competency of testimony made by its aid is not impaired by the fact that he relies not on his memory of the fact itself, but on his confidence in the accuracy of the memorandum."

The same author further illustrates the rule as follows : "In cases requiring many details of date, quantity, etc., it is common practice to allow a witness to consult, but not to read from memoranda made by him of facts within his own knowledge, to which he cannot speak in sufficient detail without such aid, although the memoranda were made in preparation for trial."

Mr. Greenleaf states the general rule as follows (1 Greenl. on Ev., 15th ed., § 436): "Though a witness can testify only to such facts as are within his own knowledge and recollection, yet he is permitted to refresh and *assist his memory by the use of a written instrument*, memorandum, or entry in a book, and may be compelled to do so if the writing is present in court. It does not seem to be necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided, after inspecting it, he can speak to the facts from his own recollection. So, also, where the witness recollects that he saw the paper while the facts were fresh in his memory, and remembers that he then knew that the particulars therein mentioned were correctly stated. And it is not necessary that the writing thus used to refresh the memory should itself be admissible in evidence."

The case of *Erie Preserving Company* v. *Miller*, 52 Conn. 444, is strongly in point. There the witness, for the purpose of refreshing his recollection as to the number of crates re-

ceived and the times when received, referred to certain memoranda in his hands which he testified were true copies of the way-bills·in the office, all of which he had examined, and that he had no knowledge upon the subject other than that· obtained by inspection of the way-bills. The defendant objected to the evidence because the original way-bills were not produced and identified by the witness; but the court overruled the objection and admitted the evidence. On appeal to the Supreme Court of Errors the ruling was sustained.

In its opinion the court said: "It is a well-settled rule that a witness may refer to memoranda made by himself or by others, for the purpose of refreshing his memory, but it must be for the sole purpose of refreshing his memory, not for the purpose of gaining entirely original information from them.

"Whether the witness in the present case brought himself within that rule it is not necessary.for us to decide, for the objection taken was solely to his use as memoranda of copies of the way-bills and not the originals. This was a matter of no importance. A witness may refresh his memory as to dates, before leaving home, by turning to entries on his account book, and may make copies of such entries to use upon the witness stand. The entries or memoranda are not evidence in themselves. They do not go before the jury. Their office is solely to refresh the witness's recollection, and they are his private property for that purpose.· If the way-bills had been offered in evidence, the objection that copies and not originals were introduced would have been pertinent; but that objection had no pertinency to the case as it stood."

Cases to the same general effect are numerous. See *Chapin* v. *Lapham*, 20 Pick. 467; *Coffin* v. *Vincent*, 12 Cush. 98; *Com.* v. *Ford*, 130 Mass. 64; *State* v. *Collins*, 15 S. C. 373; *Folsom* v. *Log Driving Co.*, 41 Wis. 602; *State* v. *Lull*, 37 Me. 246.

It is to be observed in the case at bar that the memorandum was not offered in evidence and was not read to the jury, but was only used to aid the witness in recollecting as to the items of damages claimed by him, and the amounts

thereof, as they had been noted at or near the times of their occurrence. And under the law, as above stated, we fail to see that the court erred in permitting the witness to thus refresh his recollection. The practice in this State, so far as we are aware, has always been to permit witnesses to refresh their memory in similar ways. *State* v. *Colwell*, 3 R. I. 132. The exception in question is therefore overruled.

The second and only remaining exception relied on by defendant is to the ruling of the trial court requiring the defendant to testify, in cross-examination, as to the sending to the plaintiffs of a bill for storage by him of certain boxes, etc., during the tenancy aforesaid.

The defendant in his testimony had denied all knowledge of injury to the plaintiffs from dirt, etc., falling from the ceiling, excepting four dollars damages to boxes therefrom, which amount he had paid in the spring; and he had also denied having seen a letter containing a statement of damages claimed to have been sustained by the plaintiffs, which letter and statement the plaintiffs had sent to defendant's agents who had charge of said building and collected the rents thereof. Said letter is as follows:

"PROVIDENCE, R. I., July 31, 1899.

"*Messrs. G. L. & H. J. Gross,*
              "*Providence, R. I.*

"GENTLEMEN:

"Inclosed please find a bill for what we consider due us on account of inconveniences we have experienced under our lease with Mr. Greene. In the first place we have had an inestimable amount of inconvenience because of the freight elevator being shut down since the power was shut off from the other building. Our lease reads that we shall have freight elevator as easy of access as the one we started with. All we have had except promises is the passenger elevator which is inadequate, as we have had to carry goods down and pack them, and also goods received have had to be taken out of case and carried up as elevator would carry them. The first week power was shut off a motor was put

in our place and started, but it was not of sufficient power to run our machines, consequently it was a case of run and shut down to fix that motor until another one was put in. We have been annoyed by dust, water, etc., percolating through the floor, and Mr. Greene has paid one bill for damages on this score, but that has nothing to do with this one. We have showed him where water and oil comes through on boxes and curtains. One item on gas came from our heater to run gas heater he had in here when heat was turned off. We took average between month previous and month after. The passenger elevator has been shut down for a considerable length of time and was afterwards run on the intermittent plan. We have had to walk up on innumerable occasions and customers have gone away rather than climb the stairs.

"Respectfully yours,

"WELCH & COMPANY."

"Dictated."

The bill sent with the letter was as follows:

"April 10th–15th, labor while motor was being repaired and shrinkage on work................ $98 00
"Difference on gas bill to April 21st, bill $2.75, month previous 88c, month after $1.75, average $1.31—$2.75 less $1.31...................... 1 44
"57 boxes spoiled by water ................ $3 99
"Muslin and lawn spoiled by oil and dirt.... 5 40
"Curtains spoiled by oil and dirt ........... 12 00
                                       21 39
"Extra cost of cases, cartage, etc., on account of shipping inconveniences, estimate.............. 25 00
"June 12, glass in door........................ 3 50
"Damages on account of two elevators............ 100 00
"July—Extra time on getting goods in and out and pay for man getting up lumber............... 3 00
"Goods and curtains soiled ..................... 7 00
"Labor on goods soiled......................... 2 00

"$261 33"

The reply of the defendant's agents to this letter was as follows :

"PROVIDENCE, August 7, 1899.

"*Messers. Welch & Company,*
"*No. 26 Fountain street, City.*

"GENTLEMEN :

"Your favor of July 31st came duly to hand and contents noted. The matter will be brought to the attention of Mr. Greene and he will give it prompt attention.

"Yours respectfnlly,

"G. L. & H. J. GROSS,

"*By James H. Hurley.*"

On September 19th, 1899, the following letter was sent to the plaintiffs, namely :

"PROVIDENCE, September 19th, 1899.

"*Messrs. Welch & Company,*
"*Greene Building, Providence, R. I.*

"GENTLEMEN :

"We take much pleasure in inclosing bill given to us for collection as agents of the Greene Building in which you are a tenant. We will call on you at an early date in regard to this matter.

"Yours respectfully,

"G. L. & H. J. GROSS,

"*By James H. Hurley.*"

"Dictated.
"Inclosure."

The bill which accompanied this letter was as follows :

"PROVIDENCE, R. I., September 1st, 1899.
" *Messers. Welch & Company,*
               . " *To Forrest Greene,*                        DR.

| | | | | |
|---|---|---|---|---|
| ." To storage in basement to date............ | $140 | 00 |
| "       "      first floor.............. ....... | 60 | 00 |
| "       ". third    " .................... | 15 | 00 |
| "       " fourth " .................... | 30 | 00 |

                                              "$245  00 "

Although the defendant denied all knowledge of the cor-respondence aforesaid, he admitted that he sent said bill for storage to the plaintiffs.

The object of plaintiffs' counsel in inquiring about this bill was to lay the foundation for contradicting him later on by showing that he had seen and did know all about the letter of July 31st, and the claim for damages contained therein ; that he had conferred with his agents regarding the same, and had then made up his bill to offset the claim made to his agents by the plaintiffs.    The evidence was also offered for the purpose of discrediting or impeaching the defendant's testi-mony.    And so long as the testimony objected to was followed up by the plaintiffs' counsel by calling Mr. James H. Hurley, who squarely contradicted the defendant in several important particulars, we think the ruling of the court here complained of was correct.

Hurley testified that he had charge of the real estate de-partment in the office of Gross ; that the letter of July 31, with bill inclosed, was received by them, and that on receiv-ing it they referred it to Mr. Greene ; that Mr. Greene was in their office frequently, and that, as soon as he called, the letter was handed to him, and that in reply thereto he stated that he would have a bill in set-off for storage of boxes and cases, or something of that sort, that the concern stored in the hall or in rooms which they did not hire.    The witness further testified that he had more than one conversation with the defendant about this matter ; that the bill of the plain-

tiffs was talked over quite a little, and that answer to the plaintiffs was not made until after the defendant had been called up on the telephone in regard to it; and that it was understood that they were to submit the bill for storage to offset the plaintiffs' claim, and that in pursuance thereof such a bill was sent to the plaintiffs.

As we find no error in permitting the plaintiffs to offer the testimony in question, the exception must be overruled.

Exceptions overruled, petition for new trial denied, and case remanded for judgment on the verdict.

*Doran & Flanagan,* for plaintiffs.

*Comstock & Gardner,* for defendant.