JAMES H. HIGGINS *vs.* TAX ASSESSORS OF PAWTUCKET *et al.*

DECEMBER 5, 1905.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson and Parkhurst, JJ.

(1)  *Constitutional Law.    Distribution of Judicial Powers.*

Article XII of the amendments of the constitution of the State gives to the General Assembly complete control over the distribution of the judicial power amongst the courts which it may establish, with the exception of the reservation of powers in the Supreme Court which the amendment specifies.

(2)  *Constitutional Law.    Original and Concurrent Jurisdiction.*

While the ultimate supervisory jurisdiction over all inferior courts given to the Supreme Court by the constitution is inherent in its nature as a Supreme Court, this does not prohibit the creation of other courts with power to entertain and decide any controversies which may be submitted to them by the provisions of statute law.

(3)  *Constitutional Law.    Original and Concurrent Jurisdiction.*

The grant of original jurisdiction in the constitution to a particular court of a class of cases without any words excluding other courts from exercising jurisdiction in the same cases does not necessarily deprive other courts of concurrent jurisdiction in such cases.

(4)  *Constitutional Law.    Superior Court May Issue Prerogative Writs.*

Section 12 of the court and practice act, granting jurisdiction to the Superior Court concurrently with the Supreme Court of writs of *habeas corpus, mandamus, quo warranto* and informations in the nature of *quo warranto,* in effect authorizing the Superior Court to issue such writs in cases where the Supreme Court might issue them, but providing in section 328 for a review by the Supreme Court, is not in violation of article XII of the amendments to the constitution of the State.

MANDAMUS.    Heard on constitutional question.

DOUGLAS, C. J.    This is a petition for a writ of *mandamus,* addressed to the Superior Court sitting in Providence county,

26

which was certified to this court upon the claim of the respondents "that section 12 of the court and practice act, conferring jurisdiction upon the Superior Court, is contrary to the provisions of article 12 of the amendments of the constitution of this State."

The question is of so much importance that we feel bound to consider it at the present time, although from an inspection of the papers in the case it seems probable that the immediate occasion for the relief desired has passed.

Article XII of the amendments is as follows:

"SECTION 1. The supreme court shall have final, revisory, and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs and shall also have such other jurisdiction as may from time to time be prescribed by law. The majority of its judges shall always be necessary to constitute a quorum. The inferior courts shall have such jurisdiction as may from time to time be prescribed by law.

"SEC. 2. The judges of the supreme court shall give their written opinion upon any question of law whenever requested by the governor or by either house of the general assembly.

"SEC. 3. Sections 1 and 2 of this amendment shall take in the constitution of the state the place of sections 2 and 3 of article X entitled 'Of the judicial power,' which sections are hereby annulled.

"SEC. 4. Section 3 of article XIV of the constitution of the state entitled 'Of the adoption of this constitution,' is hereby annulled.

"SEC. 5. The general assembly shall provide by law for carrying this amendment into effect, and until such provision shall be made, the supreme court, as organized at the time of the adoption of this amendment, shall continue to have and exercise the same powers and jurisdictions which it shall then have under such organization."

Article XII of the amendments was adopted as part of a plan to make the Supreme Court primarily a court of appellate jurisdiction, leaving to a subordinate tribunal general original jurisdiction in law and equity.

The old system, which divided these jurisdictions between two divisions of the Supreme Court, made it necessary to add to the number of the judges whenever more jury sessions were required, and the court was likely to become unwieldy. To many minds, also, a court where final adjudications of legal questions were made by a quorum of less than one-half the number of its judges was not logically constituted.

A comparison of article XII of the amendments with the former provisions of the constitution relating to the Supreme Court will show the extent of the changes intended to be made.

Article X of the constitution is entitled "Of the judicial power." Section 1 reads as follows: "The judicial power of this state shall be vested in one supreme court and in such inferior courts as the general assembly may from time to time ordain and establish." This section is not changed.

Sections 2 and 3, which are annulled by the amendment, read as follows: "SEC. 2. The several courts shall have such jurisdiction as may from time to time be prescribed by law. Chancery powers may be conferred on the supreme court, but on no other court to any greater extent than is now provided by law."

"SEC. 3. The judges of the supreme court shall in all trials instruct the jury in the law. They shall also give their written opinion upon any question of law whenever requested by the governor or by either house of the general assembly."

Section 3 of article XIV provides: "The supreme court established by this constitution shall have the same jurisdiction as the supreme judicial court at present established, and shall have jurisdiction of all causes which may be appealed to or pending in the same; and shall be held at the same times and places, and in each county as the present supreme judicial court, until otherwise prescribed by the general assembly." This section, which was evidently intended to be of temporary application, is annulled.

(1)    The effect of the amendment is to give to the General Assembly complete control over the distribution of the judicial power amongst the courts which it may establish, with the exception

of the reservation of powers in the Supreme Court which the amendment specifies.

The radical changes in the judicial system which are indicated are these: Original jurisdiction in equity may now be given to an inferior court. Jury trials must be held in an inferior court; for to require a majority of the members of the Supreme Court to attend at a jury trial would prevent more than one jury trial being held at the same time in the State.

If we keep in view these objects of the amendment, its scope is quite plain. The Supreme Court remains the court of last resort, the embodiment of ultimate judicial power, and is given irrevocably the instruments which are required to make its supervisory jurisdiction effectual. This we think is the tenor of the provision that it shall have power to issue prerogative writs, meaning, doubtless, those writs which were originally issued by the exercise of the royal prerogative but which have now in a different state of society lost their original character and become the channels through which a court does justice to parties in certain cases where the ordinary forms of action are unavailing.

There are here no exclusive words like the provision with regard to chancery powers in section 2 of article X, which has been superseded. The General Assembly can neither take from the Supreme Court its supremacy nor the means of exercising it; but it may grant to other courts such jurisdiction as it may deem proper and may provide such instruments or forms of process as it may think necessary for the exercise of such jurisdiction.

The amendment does not grant in terms exclusive power to issue prerogative writs to the Supreme Court, but, on the contrary, provides that the inferior courts shall have such jurisdiction as may be prescribed by law. The words of the last clause are as broad as possible, only preserving the subordination of other courts to the Supreme Court.

(2)    The ultimate supervisory jurisdiction over all inferior courts and tribunals given to the Supreme Court, by the constitution is inherent in its nature as a supreme court and in so far as it is ultimate can not be placed concurrently in an inferior court;

and the final determinations of the Supreme Court are to be accepted as law by all other tribunals; but this does not prohibit the creation of other courts with power to entertain and decide any controversies which may be submitted to them by the provisions of statute law.

The respondent urges against this construction of the amendment that it violates the accepted maxim "*expressio unius est exclusio alterius.*"

The maxim is undoubtedly a sound rule of construction in cases where it is applicable. Thus it was invoked by the justices of this court in their opinion given to the senate, "*In Re The Constitutional Convention,*" 14 R. I. 649, which is cited by the respondent. There it was held that the specified method of amending the constitution was the only lawful method; and it is difficult to imagine a reason for selecting one method out of several possible ones if all the others were still to remain legal and available.

So in *Taylor* v. *Place,* 4 R. I. 359, Chief Justice Ames established the proposition that the fundamental intention of the constitution was to lodge the sovereignty of the State in three departments, the legislative, the executive, and the judicial, and therefore the affirmative words of the constitution granting judicial power to the Supreme Court and such other courts as the General Assembly should establish were construed as taking away such power from the General Assembly.

In *Marbury* v. *Madison,* 1 Cranch, 137, Chief Justice Marshall extended the application of this rule much further than the case required; but in the later case of *Cohens* v. *Virginia,* 6 Wheat. 399, he expressly retracted these *dicta* and laid down the rule, which has been generally followed since his time, in these words: "The court may imply a negative from affirmative words, where the implication promotes, not where it defeats the intention."

The respondent advances the propositions that "An enumeration of powers operates as a restriction and limitation of a general grant, and the designation of cases in which courts have original jurisdiction is a direct prohibition of jurisdiction in other cases." These principles would be applicable here if the

amendment had provided that the Supreme Court "shall have power to issue prerogative writs" and omitted the following words "and shall also have such other jurisdiction as may from time to time be provided by law." Here is a positive grant of enumerated powers and of such other powers as may be given by law as well. In *Canby* v. *Hartzell*, 167 Ill. 628, which the counsel cites, the constitution gave the Supreme Court "final appellate and revisory" jurisdiction in all matters of law and equity and the power to issue prerogative writs; but it did not also give the legislature power to add to this jurisdiction, and the decision of the court that an act of the legislature giving the Supreme Court original jurisdiction in election cases was unconstitutional has no application to the case at bar. In *Bell* v. *Templin*, 41 N. W. Rep. 1093, and in *Jones* v. *Little Rock*, 25 Ark. 284, the same doctrine was recognized, and the jurisdiction of the Supreme Court was held to be confined to that conferred by the constitution. In neither case was there any power given to the legislature to add to the jurisdiction specified in the constitution.

Respondent's counsel advances another proposition which, if of general application, would control our decision of this case. It is that "jurisdiction given to one court by the constitution can not be given to another by an act of the legislature." The weight of authority does not sustain the proposition unless there are circumstances or context to show that the constitutional jurisdiction is intended to be exclusive. Such circumstances were found by the court in *Lander* v. *Coe*, 5 Cal. 230, in the fact that it was the apparent intention of the constitution to perpetuate the judicial system which formerly existed and the act under consideration would derange that system. The amendment we are now considering, on the contrary, was intended to inaugurate a new judicial system; and it may be observed, also, that the reasoning of *Lander* v. *Coe* was repudiated by the opinion of the same court in *Courtwright* v. *B. R. & A. W. & M. Co.*, 30 Cal. 573. In *Grand Rapids R. R. Co.* v. *Gray*, 38 Mich. 462, an act giving Municipal Courts certain enlarged powers was held to be unconstitutional, not because it was a grant of jurisdiction which belonged to other

courts, but because the Municipal Courts, being limited in their jurisdiction by the constitution, were incapable of taking such powers. This argument has no application to the grant of powers to our Superior Court now newly created.

In *State* v. *Decue*, 31 N. J. 302, the court construe the constitution of New Jersey as intending to retain the gradation of jurisdiction between the several courts substantially as it had existed prior to 1844. On page 305 the opinion says: "The question then arises, did the framers of the constitution of 1844 . . . . intend to change in any radical degree this judicial system or to alter in any respect the gradation of the several courts composing that system? I think it plain that such was not the design." *State, Flanagan,* v. *Plainfield,* 44 N. J. 118, was decided upon the same reasons. The statute found unconstitutional in *Mussen* v. *Granite Works,* 63 Hun. (70 N. Y. Sup. Ct.) 367, attempted to give exclusive jurisdiction to certain courts of cases which the constitution of New York had placed within the jurisdiction of the Supreme Court.

(3) The better doctrine, it seems to us, is that laid down in *Courtwright* v. *B. R. & A. W. & M. Co., supra,* where it was held that the grant of original jurisdiction in the constitution to a particular court of a class of cases, without any words excluding other courts from exercising jurisdiction in the same cases, does not necessarily deprive other courts of concurrent jurisdiction in such cases. It is said by Bronson, J., in *Delafield* v. *State of Illinois,* 2 Hill, 159, at p. 167: "As a grant of jurisdiction is not in its own nature exclusive, it can only be made so either by express words or by necessary implication."

In *Jones* v. *Reed,* 3 Wash. 57, the court say: "Sec. 4 of art. 4 of the constitution provides that the supreme court shall have original jurisdiction in *habeas corpus* and *quo warranto* and *mandamus* as to all state officers, and appellate jurisdiction in all actions and proceedings (with a $200 limitation in civil actions for the recovery of money). We know of no cases where a constitutional provision of this kind has been construed to confer exclusive jurisdiction. It is a grant of original jurisdiction, but there is nothing in the language of the grant to con-

vey the idea of exclusiveness, or to exclude the idea of concurrent jurisdiction."

In *Delafield* v. *State of Illinois, supra,* the court say: "There is nothing in the nature of jurisdiction, as applied to courts, which renders it exclusive. It is not like a grant of property, which cannot have several owners at the same time. It is a matter of common experience that two or more courts may have concurrent powers over the same parties and the same subject matter. Jurisdiction is not a right or a privilege belonging to the judge; but an authority or power to do justice in a given case when it is brought before him."

In *Börs* v. *Preston,* 111 U. S. 252, Mr. Justice Harlan quotes with approbation the language of Chief Justice Taney in *Gittings* v. *Crawford* (Taney's Dec. I.), as follows: "The true rule in this case is, I think, the rule which is constantly applied to ordinary acts of legislation, in which the grant of jurisdiction over a certain subject-matter to one court does not, of itself, imply that that jurisdiction is to be exclusive."

In *Ames* v. *Kansas,* 111 U. S. 449, it was held that the grant to the Supreme Court of original jurisdiction of cases in which a State is a party is not exclusive, but that Congress may confer concurrent jurisdiction in such cases upon inferior courts; and Chief Justice Waite again quotes the language of Chief Justice Taney in *Gittings* v. *Crawford.* These decisions are approved and followed in *U. S.* v. *Louisiana,* 123 U. S. 32.

The same principle of construction is applied in *In re Creighton,* 12 Neb. 280; *Matter of Bernstein,* 3 Redf. Surr. 20; *Johnson* v. *Futrell,* 86 No. Ca. 122; *Hagany* v. *Cohnen,* 29 O. St. 82; *Dillard* v. *Noel,* 2 Ark. 449; *Clepper* v. *State,* 4 Tex. 242; *Amer. Ins. Co.* v. *Canter,* 1 Pet. (26 U. S.) 511; *Ex Parte Lothrop,* 118 U. S. 113.

In the case at bar it is urged by counsel for relator that we have in this act an instance of cotemporaneous construction of the constitution. Cotemporaneous construction of a constitution by the legislature acting within a short period after the adoption of the fundamental law is said by Mr. Justice Sharswood, in *Commonwealth* v. *Green,* 58 Pa. St. p. 232, to be

*optima et fortissima in lege;* and if there ever was cotemporaneous construction it is embodied in this statute.

The constitutional amendment was drawn by a committee of the Rhode Island Bar Association, and its language was settled after conference with the judges of the Supreme Court as then constituted. Immediately upon its adoption by the people, after having been recommended by two legislatures, composed largely of the same members, a commission was appointed, composed of eminent members of the Rhode Island bar, with the then chief justice of the Supreme Court at its head, which drafted the "Court and Practice Act." The legistature to whom their report was made passed this portion of the act without alteration, and it may therefore well be said to express their understanding of the intention of the amendment. While such construction is not controlling, it should have great weight with the court. *Collins* v. *Henderson,* 11 Bush. (Ky.) 74; *People ex rel. Livesay* v. *Wright,* 6 Col. 92; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727; *People ex rel. Gallup* v. *Green,* 2 Wend. 266; Sedgw. Stat. & Const. Law, 409, 413.

(4)     Does section 12 of the court and practice act violate the provisions of the amendment as we have construed them? It is as follows: "The superior court shall have jurisdiction of such motions for new trials as may be provided by law, and concurrently with the supreme court shall have jurisdiction of writs of *habeas corpus, mandamus, quo warranto,* and informations in the nature of *quo warranto.*" It is apparent that this section gives to the superior court more than the mere power to issue certain forms of writs in aid of a jurisdiction elsewhere conferred. The authority to take jurisdiction concurrently with the Supreme Court is authority to issue these writs in cases where the Supreme Court may issue them, and the section thus gives to the Superior Court a supervision over other courts and tribunals and persons where these writs are the appropriate instruments for doing justice.

The act (section 2,) defines the jurisdiction of the Supreme Court as follows: "The supreme court shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is ex-

pressly provided; it may issue writs of *habeas corpus* of error, *certiorari, mandamus,* prohibition, *quo warranto* and all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law; it may entertain informations in the nature of *quo warranto* and petitions in equity to determine title to any office, it shall have jurisdiction of petitions for trials and new trials as provided by law, bills of exceptions, appeals, and certifications to the Supreme Court, and special cases in which parties having adversary interests concur in stating questions for the opinion of the court as provided by law, and shall by general or special rules regulate the admission of attorneys to practice in all the courts of the state."

It is therefore a portion of the supervisory jurisdiction of the Supreme Court which is thus given to the Superior Court.

If the section stood alone, and this jurisdiction were final in the Superior Court, we should have grave doubts as to its constitutionality, inasmuch as ultimate supervisory jurisdiction can not reside in an inferior court; but it is expressly provided by section 328 of the act that "Any party aggrieved by a final judgment in any proceeding in, or in the nature of, a prerogative writ, except *habeas corpus,* may, within five days after entry of such judgment, appeal to the supreme court," and the ultimate power to decide the questions involved in such cases is thus reserved to the court where the constitution places it. The final revisory and appellate jurisdiction of the Supreme Court is not infringed. Indeed, if no appeal were expressly given, a party aggrieved by the action of the Superior Court under this section might apply to this court for relief, and under the broad provisions of section 2, which we have just quoted, we should find authority to correct any injustice or error in the decision. *State* v. *Decue,* 31 N. J. 308.

We see no impropriety in giving this original jurisdiction to the lower court. In many cases of disputed title to office or to the exercise of a franchise which are within the scope of the writ of *quo warranto,* a preliminary examination of evidence and of the legal principles involved by the lower court may result in the assent of the parties interested, or, if appeal is taken,

may be very useful to the Appellate Court; and the same is true of *mandamus*. Both these forms of proceeding have, in modern times, assumed the character of private actions, though public interests may be more or less involved in the determination of them. *Chumasero* v. *Potts*, 2 Mont. 242; 4 Wait. Ac. & Def. 358.

Cases of this character may arise during the vacation of the Supreme Court which require immediate action, and the Superior Court is then open to receive them.

The question before us, however, is not whether the law is expedient, but whether it is constitutional. For the reasons we have given we answer this question in the affirmative, and this answer will be certified to the Superior Court with directions to entertain and consider the application for the writ.

*Irving Champlin,* for petitioner.

*Edward D. Bassett and Edward W. Blodgett,* for respondents.