### STATE

v.

### Joseph PRESLER.

No. 97–438–C.A..

Supreme Court of Rhode Island.

June 11, 1999.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on March 3, 1999, pursuant to an order entered on November 16, 1998, directing the parties to appear and show cause why the issues raised in the defendant's appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by the appeal should be summarily decided.

Following his conviction by a Superior Court trial jury on one charge of driving under the influence of liquor or drugs, death resulting, G.L.1956 § 31–27–2.2, and one charge of driving so as to endanger, death resulting, § 31–27–1(a), and after sentence and entry of final judgment, Joseph Presler (defendant) appeals to this Court seeking reversal of his convictions and a new trial.

### I

### Case Facts

On March 13, 1994, Rhode Island State Police Corporal Joseph Galino (Galino) was operating his police vehicle in the southbound lane on Interstate Route 95 when he observed a vehicle coming northbound toward him in the roadway. He immediately activated the overhead lights on the police vehicle and attempted to alert the driver of the oncoming vehicle to the fact that it was being operated in the wrong highway. The driver of the oncoming vehicle apparently failed to observe the police cruiser's overhead flashing lights and Galino was forced to swerve away from the

oncoming vehicle. As the vehicle passed him, Galino was able to observe in his rearview mirror that the vehicle had turned onto an exit ramp and was proceeding easterly, once again the wrong direction on Interstate Route 195 West. Within minutes, the errant vehicle collided head on with another vehicle traveling westerly on Route 195 West. The operator of that vehicle, Joseph Abilheira, was severely injured and later was pronounced dead at the local hospital. The driver of the errant vehicle, the defendant Joseph Presler, was also injured in the collision and was taken unconscious to the Rhode Island Hospital.

At the hospital, an emergency medical treatment nurse, Teresa Maine (Maine) noticed a strong smell of alcohol from the defendant. In order to facilitate diagnosis and treatment, hospital staff took blood from the defendant to determine, among other things, whether there was any alcohol in his bloodstream. State Police Trooper Raymond Studley who had earlier responded to the accident scene and had attended the defendant there, was present at the hospital when the defendant's blood was taken, but was not in the operating room where the procedure was performed. At one point, when nurse Maine was carrying the blood sample to the hospital laboratory for analysis, Trooper Studley walked along with her to the laboratory and inquired as to the defendant's condition. The test results of the defendant's blood serum revealed a blood alcohol level of .198.

The defendant later was indicted on the two driving death-related charges. Prior to trial on the charges, the defendant moved to suppress the results of the blood alcohol tests performed at the hospital emergency trauma unit. A Superior Court hearing justice granted that motion. On interlocutory appeal by the state, we reversed and entered an order in *State v. Presler*, No. 95–722–C.A. (R.I., order filed

May 16, 1996), upholding the propriety of the hospital's blood taking and the admissibility of the blood alcohol test results, and remanding the case for trial in the Superior Court.

Apparently not content with our May 16 order, the defendant, after remand, proceeded to file a second motion to suppress the results of the blood-alcohol tests performed at the hospital. The defendant's second motion to suppress reiterated essentially all of the allegations and reasons contained in his first motion, but added a new allegation and challenge to the admissibility of the test results. The defendant now claims that his blood had been taken at the direction of the state police. The defendant's second suppression motion was taken up and heard by a different justice of the Superior Court and after the hearing, that justice denied the motion, finding that the blood had been taken pursuant to hospital protocol and rejecting the defendant's assertion that it had been taken at the direction of the state police. The defendant was later tried before a Superior Court jury on the two indictment charges.

At that trial, the defendant testified. He told the trial justice and jury that he never drinks alcohol and that on the evening prior to the accident, he had attended a party where he had consumed only non-alcoholic drinks. He testified that he could not remember going to a nightclub prior to the party, but testified that other persons may claim that he had been there; that he did not remember leaving the party or recall driving a car on the highway; and that he at no time ever entered the vehicle (which he had been driving, and was found in, at time of the accident). The defendant additionally testified that at the party he had been attacked and beaten by four men who had carved a "V" into his ankle to brand him as a thief.[1] As part of his defense, the defendant theorized and told the jury that someone had put a po-

---

1. The defendant is a native of Haiti where French is the native language. The defendant

testified that the "V" represented the French word "voleur" or thief.

tion in his soft drink which then turned him into a "zombie" and caused him to lose his mind and that subsequently, someone caused him to involuntarily consume alcohol.

The jury returned guilty verdicts on both of the criminal indictment charges and the defendant now appeals. In support of his appeal, the defendant raises two issues. First, the defendant claims that the trial justice erred in denying his second motion to suppress the results of the blood-alcohol tests performed on the blood taken from him at the hospital. Second, the defendant contends that during trial, the state's prosecutor improperly attempted to refresh his memory during cross-examination.

## II

### The Motion To Suppress

■ The defendant's first appellate contention raised in this appeal concerns the trial justice's denial of his second motion to suppress. In that motion, he had alleged that the blood taken from him at the hospital and upon which the test results originated had been taken in violation of § 31–27–2 and were thus inadmissible at his trial. In advancing that contention, he obviously overlooks the clear pronouncement made by this Court in its May 16, 1996 order (*State v. Presler*, No. 96–722–C.A. (R.I., order filed May 16, 1996)), in which we concluded that the blood taken from him at the hospital had not been taken in violation of § 31–27–2 and would be admissible if offered at his trial. That order by this Court, we believe, effectively precluded any justice of the Superior Court from again revisiting the question of the admissibility of that blood test result evidence and also precluded the defendant from relitigating a fact issue upon which this Court had previously and conclusively ruled.

At first blush, it would appear convenient to refer to the issue preclusion effect of our May 16, 1996 order by ordinary

application of the law-of-the-case doctrine, but we believe that because of the particular fact situation present in this case, that doctrine would not be truly applicable here. We are not reviewing in this appeal a case wherein we are concerned with a ruling made by one judge of a coordinate jurisdiction who has been called upon to revisit and reconsider an issue that had been previously determined by another judge in the same court. Instead, we are reviewing here a case wherein this Court, by constitutional mandate the final arbiter of litigated matters, has made a prior ruling on the admissibility of certain evidence which the defendant later sought, in a second motion, to have reexamined and redetermined by a Superior Court trial justice. In this particular factual context, we believe that our May 16, 1996 order finally and conclusively determined that the defendant's blood had not been taken and tested in violation of § 31–27–2 and would be admissible at his trial. That order effectively invoked the principles of *res judicata* to the question of the admissibility of the defendant's blood test results. Our order, we believe, precluded a Superior Court justice from thereafter revisiting and redetermining the admissibility of the blood test results upon which we had previously ruled. That issue preclusion, which is the essence of *res judicata*, we believe, applies here.

Our colleague, in relying upon *Richardson v. Smith*, 691 A.2d 543, 546 (R.I.1997) in his concurring opinion, believes, however, that we should review the defendant's denial of his suppression motion issue by employing the law-of-the-case doctrine rather than by invoking the doctrine of *res judicata*. We point out first that in *Richardson*, we were concerned with a fact situation entirely different from that which is now before us. In *Richardson* we said that "after one judge has decided an interlocutory matter in a pending suit, a second judge *on that same court*, when confronted at a later stage of the suit with the same question in the identical manner, should

refrain from disturbing the first ruling." *Richardson,* 691 A.2d at 546. That is and remains sound law.

In this particular case, however, we do not have a factual-legal issue being evaluated between two Superior Court justices, but instead an issue upon which this Supreme Court had previously ruled being resubmitted again to a Superior Court trial justice. We believe that our May 16, 1996 order was a final determination of the issue and that to utilize the law-of-the-case doctrine on the case facts before us would only tend to cause confusion when applied following a final determination by this Court on a discrete issue such as involved in the two motions to suppress in this case.[2]

■ As the concurring opinion acknowledges, the law-of-the-case doctrine does not serve as an absolute bar to reconsidering a previous decision when "evidence has been introduced in the interim that significantly extends or expands the record." *Richardson,* 691 A.2d at 546. Because of the particular facts present in this case, we are reluctant to simply rely upon a legal doctrine such as law-of-the-case which, as noted in *Richardson,* "does not have the finality of res judicata." *Id.* It is because of that lack of finality that we have opted to view the effect of our May 16, 1996 order in the context of its constituting *res judicata.* We have long recognized that the law-of-the-case doctrine is "more in the nature of a rule of policy and convenience" and does not have the issue preclusion

finality of res judicata. *Salvadore v. Major Electric & Supply, Inc.,* 469 A.2d 353, 356 (R.I.1983) (citing *North American Planning Corp. v. Guido,* 110 R.I. 22, 24, 289 A.2d 423, 424 (1972)). Consequently, we should not purport to designate the nature of our appellate review here to be grounded in law-of-the-case when in reality, what we are applying here is the fundamental element of finality that we attribute to our May 16, 1996 order and which is unique only to the doctrine of *res judicata.*

Indeed, if this were truly a law-of-the-case matter, the defendant's additional and new allegation contained in his second motion to suppress might well have actually served to rescue his motion from the non-final aspect of the law-of-the-case doctrine and permitted its reconsideration by the second Superior Court trial justice. That would result because of the second motion's additional allegation that the blood samples had been seized at the direction of the State Police. That new allegation would generate new evidence and would result in an expanded record. *State v. Infantolino,* 116 R.I. 303, 311, 355 A.2d 722, 726 (1976). *See also Richardson,* 691 A.2d at 546; *State v. Collins,* 679 A.2d 862, 865 (R.I.1996).

On the basis of the record before us in this appeal, we believe that by relying upon the principles of *res judicata* in considering this appellate issue, we elevate the significance and finality of our May 16, 1996 order above and beyond that ordinarily attributed to routine law-of-the-case

---

**2.** The Superior Court justice, after our May 16, 1996 remand order, was precluded from reconsidering our determination of the admissibility of the defendant's blood alcohol test result. Such reconsideration would flaunt

"the authority of this court which, under art. XII of the amendments to the Rhode Island [C]onstitution, is vested with the ultimate judicial power in the state as well as with a supervisory jurisdiction over all inferior courts and tribunals." *Higgins v. Tax Assessors,* 27 R.I. 401, 63 A. 34 (1905). "In the exercise of that broad authority we declare the law of this state, and it is

incumbent upon those tribunals, even though they may disagree with the wisdom or soundness of our declarations, to follow the law as we announce it. *D'Arezzo v. D'Arezzo,* 107 R.I. 422, 267 A.2d 683 (1970). Such adherence to the. precedents declared by the highest tribunal in the state is inherent in our system of jurisprudence. *See generally,* Roscoe Pound, *The Theory of Judicial Decision,* 36 Harv. L.Rev. 641 (1923). Without it there can be no stability in the legal order." *City of East Providence v. Shell Oil Co.,* 110 R.I. 138, 140–41, 290 A.2d 915, 916–17 (1972). (Emphasis added.)

doctrine. On that basis, we conclude that the trial justice in this case, by denying the defendant's second motion to suppress, committed no error in denying the motion. The fact that the defendant in his second motion posed a challenge to admissibility that had not been raised in his first motion is of no consequence, because *res judicata* effectively precluded relitigation of an issue that could have been raised in the defendant's earlier motion. *See Carillo v. Moran*, 463 A.2d 178, 182 (R.I.1983).

With all due respect to the general statements cited in the concurring opinion, we conclude that *res judicata* more aptly reflects the basis for our review and is more aptly descriptive of the effect of our May 16, 1996 order,[3] notwithstanding that the order had been entered on the state's interlocutory appeal and prior to the entry of the final judgment of conviction.

## III

### Refreshing Witness Recollection

As the second basis for his appeal, the defendant asserts that the state improperly attempted to refresh his memory with the use of inadmissible statements from non-testifying witnesses where there was no actual evidence that his memory needed to be refreshed. Specifically, he asserts that because he had repeatedly testified that he did not drink, it was improper to attempt to refresh his memory on that issue. In addition, the defendant contends that the state improperly suggested that he was depressed and had been discussing girlfriend troubles on the evening prior to the collision and that these suggestions could have caused the jury to infer that he had been drinking.

■ We have previously stated that "any writing or object may be used in an effort to refresh a witness's recollection * * *." *State v. Souza*, 708 A.2d 899, 903

(R.I.1998).[I]t is not necessary that the writing thus used to refresh the memory should itself be admissible in evidence. *Id.* (quoting *Welch & Co. v. Greene*, 24 R.I. 515, 521, 54 A. 54, 56–57 (1902)). Before refreshing a witness's recollection, however, it must be apparent that the witness is unable to remember something of relevance to the matter being litigated. *See McAllister v. Chase*, 65 R.I. 122, 128, 13 A.2d 690, 693 (1940) (upholding an attempt to refresh a witness's recollection where the witness had already given positive testimony on a matter).

■ After a review of the record, we are satisfied that there was ample evidence to show that the defendant was either unable or unwilling to remember much of what had occurred prior to the collision. Although he testified that he had not been drinking and that he does not drink alcohol, he also testified that he never drives and that people always give him a ride. In addition, he testified that he could not remember leaving the party; that he did not get into the car in which he was found at the scene of the collision; that he did not remember driving the car; and finally, even if he had been driving, it was his body and not his mind that did the driving. Such testimony clearly shows that a proper foundation had been laid for the state to seek to attempt to refresh the defendants memory and that under the peculiar facts of this case, the trial justice did not err in permitting the state to attempt to refresh the defendant's memory as to whether he had been drinking and driving on the morning in question.

■ With respect to the defendant's assertion that the state improperly suggested that he was depressed, the record reveals that it was the defendant, not the state, who put that matter before the jury. During the trial, the state merely asked

---

**3.** The distinction we have noted stemming from the particular facts in this case is generally referred to by Wright, Miller & Cooper in 18 *Federal Practice and Procedure* § 4478

(1981). However, the authors appear to take refuge in obscurity in attempting to describe practicable application of the distinction.

him whether a certain non-testifying witness's statement could serve to refresh his memory about meeting that witness during the evening prior to the collision. In a non-responsive answer to that question, the defendant stated that he had not been depressed. The state then asked the defendant if he recalled having discussions about his girlfriend. Previously, there had been no testimony concerning a discussion with the defendant's girlfriend; however, before the defendant could answer, defense counsel objected and a conference occurred at the side bar whereupon the state withdrew the question. Consequently, no error resulted.

For the foregoing reasons, the defendant's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the case papers are remanded to the Superior Court.

FLANDERS, Justice, concurring.

I concur with the result and with all aspects of the Court's opinion except for that portion concerning the doctrine of res judicata. Because no final judgment entered after our initial ruling which reversed the Superior Court's grant of the defendant's motion to suppress the blood-test results, I do not believe res judicata is applicable. Res judicata only applies where a prior suit has been brought to a valid and final personal judgment. *See* Restatement (Second) *Judgments* § 17 at 148 (1982); *see also ElGabri v. Lekas,* 681 A.2d 271, 275 (R.I.1996); *E.W. Audet & Sons, Inc. v. Firemens Fund Insurance Co.,* 635 A.2d 1181, 1186 (R.I.1994) (citing Restatement (Second) Judgments for its treatment of the issue of res judicata). The same is true for collateral estoppel, which applies only to a subsequent action after "an issue of fact or law is actually litigated and determined by a valid and final judgment." Restatement (Second) *Judgments* § 27 at 250; *see also E.W. Audet & Sons, Inc.,* 635 A.2d at 1186 (citing Restatement (Second) *Judgments'* treatment of the collateral-estoppel issue).

Moreover, "[f]inality of judgment contemplates an act that definitely terminates the litigation between the parties so that if we were to affirm the subject judgment, the trial court would have nothing further to do on remand other than order execution of the judgment previously entered." *Medeiros v. Hilton Homes, Inc.,* 122 R.I. 406, 410, 408 A.2d 598, 600 (1979).

Here, the trial justice granted defendant's motion to suppress the results of his blood-alcohol test pursuant to G.L.1956 § 31–27–2. The state appealed this interlocutory decision, and we reversed. We held that the above-cited statute only applied to "blood-taking initiated by the state, including police officers, for the purpose of possible prosecution," and not to situations like this one in which private medical providers conduct blood tests for the purpose of assisting in the furnishing of medical treatment. *State v. Presler,* No. 95–722–C.A., slip op. at 2 (R.I., filed May 16, 1996) (order).

As a result of this interlocutory decision, the law-of-the-case doctrine, rather than res judicata, foreclosed any relitigation on remand of whether the police initiated the blood-taking in this case. "A motion to suppress is interlocutory in character, and neither res judicata nor collateral estoppel applies to a ruling which is less than a final judgment." *People v. Lewis,* 659 P.2d 676, 679 (Colo.1983); *see also, e.g., DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) (acknowledging that suppression orders in criminal trials are "truly interlocutory"). The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 815–16, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811, 830 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318, 333 (1983)). In addition, that decision "applies as much to the decisions of a coordinate court in the same case as to a court's own

decisions." *Id.* at 816, 108 S.Ct. at 2177, 100 L.Ed.2d at 830. The doctrine has "developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." 18 Charles Alan Wright et al. *Federal Practice and Procedure* § 4478 at 788 (1981). Moreover, the law-of-the-case doctrine "turns on whether a court previously 'decide[d] upon a rule of law.'" *Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178, 100 L.Ed.2d at 830. It applies to those issues of law which the appellate court in fact considered and decided as well as those necessarily inferred from the appellate court's disposition. *See Cohen v. Brown University*, 101 F.3d 155, 168 (1st Cir.1996) (quoting *Commercial Union Insurance Co. v. Walbrook Insurance Co.*, 41 F.3d 764, 770 (1st Cir.1994)). *Compare* 18 Charles Alan Wright et al., § 4478 at 789 (noting that "questions that have not been decided do not become law of the case merely because they could have been decided"), *with E.W. Audet & Sons, Inc.*, 635 A.2d at 1186 (explaining that the doctrine of res judicata not only precludes the relitigation of all issues the parties raised, but also those issues they could have raised in the original action).

Furthermore, the law-of-the-case doctrine is not restricted to rulings issued by the same or a coordinate court. Rather, it also applies to rulings by an appellate court after the case is remanded to a lower court for further proceedings in the same case. Thus, "[w]hen a case has been once decided by this court on appeal, and remanded to [the lower court], whatever was before this court, and disposed of by its decree, is considered as finally settled. The [lower court] is bound by the decree as the law of the case; and must carry it into execution, according to the mandate." *In re Sanford Fork and Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414, 416 (1895); *see also, e.g., University of*

*Rhode Island v. Department of Employment and Training*, 691 A.2d 552, 555 (R.I.1997) (holding that opinions of this Court declare the law in Rhode Island, and lower courts must follow that law as announced); *D'Arezzo v. D'Arezzo*, 107 R.I. 422, 426, 267 A.2d 683, 685 (1970) (same); 18 *Moore's Federal Practice* § 134.51[2][b] at 134–51 (3d ed. 1998) ("The decision of an appellate court on an issue of law governs the issue during subsequent stages of litigation, * * * and on any further appeal. *The decision of the appellate court establishes the law of the case and it must be followed by the trial court on remand * * *. If there is an appeal from the judgment entered after remand, the decision of the first appeal establishes the law of the case to be followed on the second appeal.*") (emphasis added); Jack H. Friedenthal et al., *Civil Procedure* § 14.1 at 614 (2nd ed. 1993) ("[L]aw of the case will apply when an issue in the case is decided by the trial court and appealed. If the appellate court reverses and rules on the law to be applied and how it affects certain issues of the case, those findings will be binding on the trial court when the action is remanded for a new trial."). *See generally* 18 Charles Alan Wright et al., at § 4478 (discussing the law-of-the-case doctrine as applied to further trial-court proceedings after an initial appeal).

However, unlike res judicata, the law-of-the-case doctrine does not serve as an absolute bar to reconsider a previous decision "when evidence has been introduced in the interim that significantly extends or expands the record," *Richardson v. Smith*, 691 A.2d 543, 546 (R.I.1997), or "where the initial decision was 'clearly erroneous and would work a manifest injustice,'" *Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178, 100 L.Ed.2d at 831 (quoting *Arizona v. California*, 460 U.S. at 618 n. 8, 103 S.Ct. at 1391 n. 8, 75 L.Ed.2d at 333 n. 8). Thus, while the law-of-the-case doctrine expresses the practice of courts generally to refuse to reopen issues that had been decided in earlier stages of the same litiga-

tion, it does not limit their power to do so if circumstances so change in the interim that the interests of justice mandate a second look. *See Messenger v. Anderson,* 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912).

Understandably, the majority seeks to bolster the finality of this Court's rulings on interlocutory matters by eliminating some of the potential wiggle room that exists in law-of-the-case situations when one trial justice is reviewing another trial justice's earlier order in that same case. And I certainly agree that, in a case on remand from this Court, the circumstances under which a trial justice should be free to modify our mandate should be much narrower than in those situations where the trial justice is faced with an earlier ruling in the same case by a coordinate trial justice. However, rather than stretching the doctrine of res judicata to cover a situation in which it was never intended to apply,[4] I would simply hold that the degree of finality to be applied to the law of the case is substantially greater after the highest court in the state has ruled on an interlocutory issue and then remands the case to the trial court than when a trial justice is faced with an earlier ruling in the same case by a coordinate trial justice.

Although no final judgment entered after our first ruling on appeal (we remanded the case to the Superior Court for further proceedings), and hence, no res judicata effect could be given to that rul-

ing, we determined the issue of why the medical providers performed the blood tests, and it therefore became the law of this case. *See Columbian National Life Insurance Co. v. Industrial Trust Co.,* 57 R.I. 325, 190 A. 13 (1937) (holding that the Court's decision in its previous opinion became the law of the case on the second appeal in the same case); see also *Royal Insurance Company of America v. Quinn–L Capital Corp.,* 3 F.3d 877, 880–81 (5th Cir.1993) (concluding that as to decisions of law, the court's decision on the interlocutory appeal will establish the law of the case); *Satterwhite v. State,* 858 S.W.2d 412 (Tex.Crim.App.1993) (holding that under the law-of-the-case doctrine, the court's resolution of the question of law in appellant's previous appeal of his motion to suppress governs the disposition of the same issue in his present appeal); 18 *Moore's Federal Practice* § 134.24 at 134–60 ("Once an appeal is taken and an issue is decided, that decision becomes the law of the case for that issue, even if decided on an interlocutory appeal."). Moreover, none of the facts surrounding the taking of the defendant's blood have changed since this Court ruled on the legality of the blood testing in connection with the defendant's first appeal, nor have other circumstances surfaced indicating that a manifest injustice would result in following the law of this case. *See Christianson,* 486 U.S. at 817, 108 S.Ct. at 2178, 100 L.Ed.2d at 831; *Richardson,* 691 A.2d at 546.[5]

4. In researching this issue, I was unable to locate a single case in this or in any other jurisdiction that has ever applied the doctrine of res judicata to the proceedings on remand after an interlocutory ruling by an appellate court.

5. The mere fact that defendant's post-remand motion to suppress added a new allegation that the blood samples had been seized at the direction of the police did not serve to rescue his motion from the law-of-the-case doctrine. Because defendant could have raised this issue earlier and because he adduced no compelling reasons why he failed to do so, the law of the case doctrine barred any reconsidera-

tion of the motion to suppress. However, if in fact newly discovered evidence had surfaced that the police had directed the blood seizure—evidence that could not have been, in the exercise of due diligence, produced earlier—then the law-of-the-case doctrine would not bar a reconsideration of the earlier suppression decision, nor should it do so. *See, e.g., People v. Roybal,* 672 P.2d 1003 (Colo.1983) (holding that the state supreme court's ruling on the defendant's interlocutory appeal, which required the suppression of his written statement as a product of an invalid arrest, became the law of the case and therefore precluded the trial court on remand from granting the state an evidentiary hearing on

Thus, I agree with the Court's opinion that the first appeal determined that the taking of the defendant's blood was not performed at the direction of the state police, but rather was taken pursuant to hospital protocol. This became the law of the case after the first appeal, and, absent extraordinary circumstances not present here, the defendant could not relitigate this issue after the remand. Accordingly, I concur in the Court's opinion.

the issue of whether the taking of a blood alcohol test was also the product of the defendant's illegal arrest). In affirming the lower court's denial of a probable-cause hearing, the court noted:

"If the prosecution had proffered newly-discovered evidence, the result might be different. A trial court may reconsider its own suppression order when there is new, probative evidence available and the prosecution shows good cause why that evidence was not introduced previously. Even

where a trial court's suppression order has been affirmed on interlocutory appeal, we believe that in appropriate circumstances newly-discovered evidence could justify the trial court's reconsideration of its earlier ruling. Here, however, the evidence that the prosecution now wishes to adduce [an additional witness] was available at the first hearing * * *." *Id.* at 1006 n. 7.