ISABELLE MARTIN AND ISABELLE M. MARTIN, AS EXECUTRIX, ETC., OF WILLIAM B. MARTIN, DECEASED, PLAINTIFF-APPELLANT, v. CITY OF ASBURY PARK, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.

Submitted October 26, 1934—Decided January 10, 1935.

For the appellant, *Francis A. Gordon.*

For the respondent, *Donald W. Waesche.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from an order of the Supreme Court made by Mr. Justice Perskie setting aside a levy made in behalf of the plaintiff on certain real estate situate in the city of Asbury Park.

In consequence of certain injuries sustained by Mrs. Martin, a judgment was obtained against the city of Asbury Park, said judgment being upheld by this court in 111 *N. J. L.* 364. A writ of execution was duly issued out of the New Jersey Supreme Court, by virtue of which the sheriff of Monmouth county levied upon certain land of the defendant lying between Ocean avenue and the boardwalk. The land levied upon has been leased by the defendant to one Edward T. Mitchell for the purpose of maintaining thereon a bathing establishment previously erected by the defendant city. The injuries for which the judgment was given were sustained by Mrs. Martin while a patron of this bathing establishment.

Upon motion of the defendant the question of the propriety of this levy was raised before the Supreme Court, as a result of which the order setting aside the levy was made. This appeal is based upon the sole ground that the land involved was used by the defendant for private and proprietary purposes, and as such was subject to the levy made.

It has long been a settled rule in this state that property used by a municipal corporation in the exercise of its function of government cannot be taken in execution upon a

judgment against the corporate body. *Lyon* v. *City of Elizabeth,* 43 *N. J. L.* 158.

Although no cases appear on appellant's brief precisely in point with the instant case, there is authority, both statute and case, that property held by a municipal corporation for private and proprietary purposes can be taken in execution upon a judgment entered against such corporation. Executions act, 2 *Comp. Stat., p.* 2255; *Rahway* v. *Munday,* 44 *N. J. L.* 395.

The pertinent question, therefore, is as to the status of the land taken under the levy here contested.

The land in question was purchased by the defendant under authority of "An act to authorize cities bordering on the Atlantic ocean to purchase the lands in any such city bordering on the ocean and adjacent lands thereto in such city for public purposes and to improve the same, and to issue bonds for such purposes." Laws of 1900, chapter 99. *Reade* v. *Asbury Park,* 101 *N. J. L.* 319; *affirmed,* 102 *Id.* 221. To the legislative declaration has been added the opinion of this court that such lands could be, and were, purchased for public purposes. *Bisbing* v. *Asbury Park,* 80 *Id.* 416.

Sections 1, 2 and 3 of this act provide for the issuance of bonds to raise the funds necessary to the purchase, and further provide for the administration of such lands when purchased. Section 4, amended by *Pamph. L.* 1904, *ch.* 86, and *Pamph. L.* 1919, *ch.* 252, provides for the leasing of such lands "for any purpose not inconsistent with the laws governing such city." It must be noted that in the original act and both amending acts the leasing authorized is *"for the purpose of paying the principal and interest on said bonds."* There is no power given to the city to apply the income of such leases except first, to necessary repairs and improvements on such property, and second, to the payment of the interest and principal of said bonds as they become due.

It is quite apparent that the legislature was of the opinion that it was to the best interest of the public that a municipality bordering on the Atlantic ocean should have control

over what might be called the riparian lands within its jurisdiction. The unique position of our seashore resorts enables them to extend certain benefits of the ocean and beach to persons who come from many sections of this and other states. It may well be said that the functions of a municipality so situate include the supervision and development of these special advantages. With such a view, the legislature specifically provided that the public lands purchased under the authority of the above act should be so improved and developed that the funds necessary to the purchase should eventually be contributed by the public so benefited; but a condition was imposed, that the income thus derived from the public must be applied to the maintenance of these public lands from which the benefit is derived. The conclusion is inevitable that the plan of purchase, leasing, providing of bathing pavilions, &c., are all various units of the one "public purpose."

Plaintiff-appellant, has argued that by virtue of the affirmance of the judgment secured against the defendant-respondent city, it is now *res adjudicata* that the land here involved was held by the defendant for private and proprietary purposes. As stated above, the determined liability of the defendant resulted from its leasing of this same land for the purpose of maintaining a bathing establishment. *Martin* v. *Asbury Park*, 111 *N. J. L.* 364.

The previous case decided that the operation of a bathing establishment was a private and proprietary business, and further held that the land in question was used in such business. Such a finding as to the *use* of such land is not necessarily a finding as to the *purpose* of the use, and therefore as to the public or private nature of the property.

As stated before, the statute under which this land was acquired authorized a purchase for public purposes only. It further provided for a use, now found to be private and proprietary, in order that the public purpose might be self-supporting. Since the use is thus incidental to the public purpose, the finding in the former case does not of itself dedicate the land to such private, proprietary, or non-

governmental use, and there is nothing in the record that makes out the contrary.

Where a public or *quasi*-public corporation is involved, civil liability as to the use of property, and the sale of such property under execution are two distinct questions. It has been definitely decided in other jurisdictions that although a corporation in the nature of a public utility may be held liable for negligence, the property held by it for the purpose, and used in the execution, of its public duty cannot be sold under execution for satisfaction of a judgment against such corporation. (*McColgan* v. *Baltimore Belt Railroad Co,.* 85 *Md.* 519; 36 *Atl. Rep.* 1026; *Margo* v. *Pennsylvania Railroad Co.,* 213 *Pa.* 468; 62 *Atl. Rep.* 1081.

Property acquired by a municipality for, and employed in the discharge of its sovereign functions, cannot be diverted to the satisfaction of obligations resting upon them in their character of private corporations. *Lyon* v. *City of Elizabeth, supra.*

The setting aside of this levy has not impaired the plaintiff's writ of execution, nor his resort to the usual method of obtaining satisfaction on a judgment held against a municipal corporation. No case has been shown wherein a levy and sale as contemplated by the plaintiff has been consummated. "The practice in this state has uniformly been to issue execution against the municipality, not to seize and sell its public property, but for the purpose of laying a foundation for a *mandamus* proceeding." *Piscataway Township* v. *First National Bank of Dunellen,* 111 *N. J. L.* 412.

In fact, the defendant has already provided in its budget for the payment of, if not all the plaintiff's judgment, at least the greater portion thereof.

If the course of action attempted by the plaintiff were allowed, it would act to give her an unwarranted preference over other creditors of the defendant. It is not denied that more than half of the amount of the defendant's present indebtedness has arisen from the purchase of the lands authorized by the act of 1900. It would be unjust to allow the plaintiff to seize upon this land in derogation of the rights

of the bondholders, who have advanced credit to the city of Asbury Park so that it may fully offer its natural advantages to the public at large.

Furthermore, to permit these lands to be sold at public sale under this execution would thwart the very purpose the legislature had in mind, when, by the act of 1900, *supra*, it authorized the city of Asbury Park to acquire the lands "bordering upon the ocean and adjacent thereto, situate in such city for public purposes and for places of resort for public health and for recreation," and it would, therefore, be against public policy to permit lands acquired by the city for that purpose to be sold under execution to whomsoever would buy.

Where, as here, the city holds property charged with a public interest, the rights of an individual creditor must yield to the paramount interest of the whole public.

We find no inconsistency between the view herein expressed and the view expressed by us in this case in 111 *N. J. L.* 364.

We are of the opinion that the judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.