THE COLUMBIAN NATIONAL LIFE INSURANCE COMPANY *vs.* INDUSTRIAL TRUST COMPANY *et al.*

FEBRUARY 6, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

Moss, J. This is a suit in equity brought by the complainant as the insurer in a policy of insurance on the life of Timothy V. Wholey. It was brought after his death against the Industrial Trust Company as assignee of the policy and Elizabeth V. Wholey, who is the widow of the insured and executor of his will and sole beneficiary of the policy; and the relief prayed for is the cancellation of a reinstatement of it after it had lapsed for a default in the payment of a premium. The suit was heard in the Superior Court on an amended bill, answers thereto, and evidence; and it is now before us on the respondents' appeals from the final decree for cancellation of the reinstatement, upon payment to the respondents of certain sums admitted by the complainant to be due for the net paid-up value of the policy at the time of the default and for money paid thereafter by the insured on premiums, and interest on these sums, and upon the surrender by the complainant of

certain notes given by the insured on account of such premiums.

This is the second time that this case has been before this court. The respondent beneficiary demurred to the first amended bill and the Industrial Trust Company answered it, alleging that after the bill had been filed it had instituted an action at law on the policy. After this fact had been admitted by the complainant's replication, the Industrial Trust Company filed a motion to dismiss the suit on that ground. A decree of the Superior Court, sustaining the demurrer and the motion, was reversed by this court, which held that this amended bill stated a case for cancellation which should be heard in equity by the Superior Court, notwithstanding the action at law. *Columbian National Life Insurance Co.* v. *Industrial Trust Co.*, 53, R. I. 334, 166 A. 809.

The facts that were set forth in this amended bill as the ground for cancellation of the reinstatement were that after the policy had lapsed on October 24, 1931, for default in payment of a premium note, the insured had made the application of November 12, 1931, for reinstatement, on which the reinstatement was based, and had therein stated that he had not been ill since he was last examined for the complainant, that he had not consulted a physician since then, and that he was in sound health; that he had therein agreed that any untrue statement therein should operate to limit the obligation of the complainant to that which existed at that date, with a return of any payments made in connection with the application; that the complainant believed these statements to be true and, in reliance upon their truth and by agreement with the insured, reinstated the policy on January 15, 1932, at a certain increased rate of premium, due to his blood pressure being slightly elevated and to his weight having previously been reduced by dieting from about two hundred and sixteen pounds to about one hundred and eighty pounds; that on or about October 30, he paid to the com-

plainant, with interest, the amount of the defaulted note due October 24, 1931, and before the reinstatement paid a part but not all of another premium note, when it was due; that these payments were accepted by the complainant conditionally, subject to an express agreement by him that the policy should not be considered reinstated or in force by reason of such payments until formal approval of the reinstatement should be given at the home office of the company at Boston, Massachusetts; that in December, 1931, the insured sustained an attack of angina pectoris, which was accompanied with severe pain extending from the shoulder down the arm and hand and on account of which he consulted a physician and remained in bed for more than a week; and that the complainant did not learn of these facts, as to this attack, until after his death in May, 1932, from angina pectoris and myocarditis, and would not have reinstated the policy, if it had known these facts.

In its previous opinion this court, at page 340, held that the representations in the application "were continuing representations by the insured", and added: "There was a duty on the part of Wholey to disclose any material change in his health occurring between the time when he made his application for reinstatement and the time of the acceptance of the risk by the insurer." In the opinion this court also held that on the facts set forth in the bill concerning the final meeting of the minds of the parties as to the contract of reinstatment, (facts which the Superior Court found after the hearing on the merits to have been established by clear and convincing evidence), that contract was a Massachusetts contract; and that therefore Public Laws of Rhode Island 1931, Chap. 1757, Sec. 12, to the effect that no misstatement made in procuring a policy of life insurance shall render the policy void, unless the matter thus represented shall have actually contributed to the death of the insured, and making the question of such contribution one for the jury, had no application to such contract.

After the suit had been returned to the Superior Court, the complainant by leave of court, granted against the objection of the respondents, again amended its bill, by adding, as a further ground for a cancellation of the reinstatement, that on two occasions in 1931, prior to October 24, 1931, and after his last examination for the complainant prior to the date of his application for reinstatement, he had consulted a certain physician and had complained to that physician of cardiac pains possibly indicating a condition of angina pectoris, and that the complainant had no notice of this until after his death.

After the hearing of the case on the merits in the Superior Court, this additional ground for cancellation was sustained by the court both in fact and in law. Before us the respondents have strenuously contended against these rulings and have urged that for several reasons that court erred in permitting the complainant to amend its bill by adding this ground. We do not find it necessary or advisable in this opinion to discuss the questions raised as to the new matter thus added, as we find ample justification for deciding the case upon other grounds without going into those questions. This court in its former opinion held that on the allegations of the bill as first amended the complainant was entitled to cancellation and we find no justification for differing, in the same case, from that conclusion or the rulings upon which it was based and which are now the law of this case.

After the case had been fully heard on its merits, the Superior Court filed a decision and made therein numerous findings of fact, which it said were supported by credible evidence that was clear and convincing, and then stated: "The findings of fact made in this case bring it within the allegations of the bill which was before the Supreme Court on demurrer. The only variance between the allegations of the bill and the proof is this: the bill alleged in paragraph eighth that after the attacks in December, 1931, Mr. Wholey remained in bed on account of this seizure for

more than a week. This portion of the allegation was not made out by proof but is an immaterial variance." With both of these statements we fully agreed, and we hold that the findings relied upon therein are supported by the evidence.

As to the weight to be given by this court to such findings of fact by the Superior Court, the law of this State is well stated as follows in *Prudential Insurance Co.* v. *Tanenbaum*, 53 R. I. 355, at 359: "We have frequently held that the finding of facts from conflicting evidence made by a justice sitting without a jury is entitled to great weight and will not be set aside, unless such finding clearly fails to do justice between the parties. *Raferty* v. *Reilly*, 41 R. I. 47; *Preble* v. *Higgins*, 43 R. I. 10." In the instant case we are of the opinion that the finding of facts which was made by the justice by whom it was heard on the evidence in the court below and which was set forth in his decision does not fail to do justice between the parties.

The principal facts, found by him in his decision and supported by the evidence, which pertain to the case stated in the bill as first amended and which have not been covered sufficiently *supra,* are in substance as follows: The policy was issued to the insured on June 2, 1925; and his wife, who is one of the respondents, was named as sole beneficiary therein and afterwards became the executrix of his will. On February 2, 1931, the insured and the beneficiary assigned all their interests therein to the other respondent, Industrial Trust Company. No question was raised as to the validity of this assignment, nor is any contention made that the assignee has any higher right than the beneficiary would have had if no assignment had been made.

The annual premium which was due on June 2, 1931, was, by agreement, paid partly in notes made by the insured. Each note provided that if it should not be paid "when due, without grace, said policy shall, without fur-

ther notice, become void and the insurance thereunder then terminate, subject to the conditions therein relating to surrender values." Some of these premium notes were taken up by partial payments and the unpaid balances covered by other notes. One such note for an unpaid balance, containing the above-stated provision, fell due on October 24, 1931. It was defaulted and the policy therefore lapsed on that date.

It contained the provision that "should this policy lapse it may be reinstated at any time upon evidence of insurability satisfactory to the company." Over the telephone the insured was notified of the lapse by the cashier of the company's local office in the City of Providence; and he replied that he would fill out an application for reinstatement. She, the cashier, therefore, on October 29, 1931, sent him a printed form of application for reinstatement, to be filled out and executed by him, and a letter stating that "upon receipt of the completed form same will be forwarded to our home office for approval." This form, as printed and as executed, contained, besides the clause above stated as to the effect of any untrue statement therein, the following: "I further agree that said policy or policies shall not be considered reinstated or in force by reason of any cash paid or settlement made in payment or on account of said premium or note until formal approval is given at the home office of the company at Boston, Mass., with delivery of receipt for said premium or of said note and I agree to accept the return of any payment made on account thereof if the company shall decline to approve." The application stated that the policy had lapsed for nonpayment of a note for $64.96 due October 24, 1931.

On October 29, 1931, the insured sent to the company's Providence branch office a check for the amount of the note due on October 24. This check was deposited by the cashier in the bank for collection and was paid through the clearing-house on November 2, 1931. Meantime, on October 30 and 31, 1931, the insured filled out and executed

the application and sent it to the same office, from which it was sent to the home office in Boston; and he followed it with another similar application for reinstatement, containing the same clauses and dated November 12, 1931. This application, also, described the policy as lapsed for nonpayment of the premium note due October 24, 1931. The money paid by the insured's check of October 29, 1931, was never receipted for by the company at its home office as a payment of the defaulted premium note nor was it ever approved there as a payment removing the default or as a ground for reinstating the policy. On the contrary both the company and the insured treated the whole matter as purely one of a reinstatement of a lapsed policy under his application of November 12, 1931, therefor. The respondents strongly contend that the default by the insured was waived by the company, but it is clear to us that the Superior Court was fully justified on the evidence in overruling this contention and holding that "the complainant did not waive its right to treat the policy as lapsed."

In connection with the application of November 12, 1931, the company had the insured examined by a physician, who reported that he was overweight. The company also ascertained the fact that between 1925 and the time when the policy lapsed "Mr. Wholey's weight had been excessive, his blood pressure had been elevated, and his weight and blood pressure had been reduced by dieting and treatment." As a result of learning these facts, the company, acting in accordance with what the Superior Court reasonably found from the evidence to be usual life insurance practice, treated him as an impaired risk and reasonably refused to reinstate the policy, except at a considerably increased rate of premium.

Acting on the knowledge which it had thus obtained, but without having any notice that his health was otherwise in any way impaired, and relying on his statements in his applications for reinstatement that he had consulted no physicians since he was last examined for the company,

except certain ones that he named, and had had no illness since the policy was issued and was in sound health, the company, on December 11, 1931, offered to reinstate the policy, "subject to Table D rating", which meant the considerably increased rate of premium. In response to a request for further information, the company notified him, in the latter part of that month, that to get the policy reinstated at the increased rate, he would have to pay the sum of $1,077.74, made up of the amount of the outstanding premium notes and interest thereon and an item of $308.03, described as "Temporary Extra Premium from 12/8/31 to 6/2/32", being the difference for the period from December 8, 1931, to the next premium date, between the old and new rates of premiums. The former date does not correspond to any date of application for reinstatement or of any examination of the insured, but seems to be about the date when the company decided to offer him a reinstatement at the increased rate.

On or just after January 5, 1932, he notified the company, for the first time, that he would pay the required sum of $1,077.74 for a reinstatement at the new rate, but imposed the condition that he could pay it in six monthly payments, the first one to be due January 15. A few days later it replied to him that he could pay that sum in six notes for $179.62 each, the first payable on January 15, 1932, and the others on the 15th of each succeeding month to and including June; and sent him notes, made out accordingly, for his signature. He did not accept this offer, but instead of the first note, payable January 15, 1932, he sent to the company his check for $78.92 and a note for $100.70, signed by him and payable February 15, 1932, and he signed and at the same time sent to the company the other notes which it had sent him. It did not accept the check and notes, thus sent by him, until they were received at its home office in the city of Boston within a few days after January 15, 1932, and then and there it accepted them as satisfactory, made a memorandum dated

January 22, 1932, of the change of the policy to the new premium rate and executed a rider, which was dated January 15, 1932, and evidenced the reinstatement and was to be attached to the policy. This rider said: "In consideration of the reinstatement of this policy it is hereby provided and agreed that an extra annual premium shall be added to this policy based on Table D rating to become effective December 8, 1931." The rider also set out the amount of "the extra premium due from December 8, 1931, to June 2, 1932." Within a few days after January 22, 1932, the rider, a premium receipt and the old unpaid premium notes were sent to the insured.

After the applications for reinstatement had been made and while the negotiations for a reinstatement at the increased rate were pending, namely, on December 13 and 15, 1931, the insured, as above stated, had severe attacks of pain, for which he consulted a physician, and was informed that they were attacks of angina pectoris. He had studied medicine and knew what angina pectoris was, yet he never disclosed the attacks or the diagnosis to the company, which had no notice, until after his death in May, 1932, that he had ever had any heart trouble or that he had ever been told that he had heart trouble, and which, as the Superior Court found from clear and convincing evidence, would not have reinstated the policy if it had been informed of these attacks and the diagnosis of them.

On the facts which in the first amended bill were set forth as to the making of the contract of reinstatement and which are consistent with the above pertinent facts proved by the evidence, this court in its previous opinion held that the contract was made in Boston and was a Massachusetts contract, since the last act constituting the "meeting of the minds" of the parties took place there. On the above-recited pertinent evidence the justice of the Superior Court, in his decision on the merits, came to the same conclusion, saying: "I find that the contract of reinstatement was not made until the home office of the com-

plainant accepted the notes, and I rule that the contract of reinstatement was made in Boston, Massachusetts." With this conclusion we agree, in view of the previous ruling of this court on allegations of substantially the same facts. This conclusion prevents the application of the above-mentioned Rhode Island statute, on which the respondents strongly rely, relating to the effect to be given to misstatements in applications for life insurance policies, since that applies only to life insurance contracts made in this State. *Columbian National Life Insurance Co.* v. *Industrial Trust Co., supra,* at page 341.

No evidence was offered as to the law of Massachusetts and therefore the presumption must be that the applicable law of Massachusetts, when the contract of reinstatement was made, was the same as the common law of Rhode Island on the subject. *O'Reilly* v. *N. Y., N. H. & H. R. R. Co.,* 16 R. I. 388; *O'Donnell* v. *Johnson,* 36 R. I. 308. This law was that such a contract, if procured by material false representations by the insured, which he warranted to be true, would be voidable by the insurer irrespective of whether the matter of the false representation contributed to his death. This, and not the statute, being the rule of law applicable to the instant case, the complainant is not required, in order to show itself entitled to the relief prayed for, to prove the fact, which the Superior Court, however, found from the evidence to be true, that the matter misrepresented contributed to the death of the insured. The conclusion that the statute does not apply refutes also the respondents' contention that the question whether such matter did so contribute must be submitted to a jury for decision. Whether the contention would be valid, if the statute applied to this contract, we do not decide.

Each of the applications made by the insured in the instant case contained these words, which referred to the above-mentioned statements by him: "I warrant each of the answers on the reverse side of this sheet to be full,

complete and true, and I agree that they shall, with the following agreements, be taken as the basis for the reinstatement or placing in force of the policy. I further agree that any untrue statement shall operate to limit the company's liability under the said policy or policies to that which exists at this date." It is well settled that in such a case, if a policy is procured by material representations, made as of the applicant's own knowledge, which are in fact false, the policy is voidable by the insurer, even though the applicant believed them to be true, or had no intent to defraud. *Sweeney* v. *Metropolitan Life Ins. Co.,* 19 R. I. 171; *Leonard* v. *State Mutual Life Assurance Co.,* 24 R. I. 7; *Prudential Insurance Co.* v. *Tanenbaum, supra,* at page 365. See also *Metropolitan Life Ins. Co.* v. *Carter,* 252 Mich. 432; *New York Life Ins. Co.* v. *McCarthy,* 22 F. (2d) 241; *Aetna Life Ins. Co.* v. *Bolding,* 57 F. (2d) 626; *New York Life Ins. Co.* v. *Bullock,* 59 F. (2d) 747.

The respondents contend that the insured did not believe that he had angina pectoris, in spite of what happened on December 13 and 15, 1931; and that therefore his failure to disclose it to the complainant was no ground for cancelling the reinstatement. But he knew that he had had two attacks of illness, which were serious enough to cause him to send for a physician for each one, and he knew, as found by the Superior Court from sufficient evidence, that the physician diagnosed them as angina pectoris. He knew, also, from the language of the application for reinstatement, that the company deemed it material whether he had been ill and whether he had consulted a physician and, if so, what physician, so that it could find out from such physician the diagnosis and the seriousness of such illness. He knew, on December 15, 1931, that the statements which he had made in the application, and which he had warranted to be true, and which the company was relying upon in deciding whether to reinstate his policy, were no longer true. Therefore, on principle and authority, his disbelief in the physician's diagnosis could be no

excuse for his failure to disclose the facts to the company, so that it could consider and investigate them.

The respondents vigorously contend that the contract of reinstatement was made to take effect as of December 8, 1931, and that the applicant was under no duty to disclose anything with regard to his health that occurred after that date, and they rely strongly on the cases of *Mutual Benefit Life Ins. Co.* v. *Higginbotham,* 95 U. S. 380, and *New York Life Ins. Co.* v. *Moats,* 207 Fed. 481. In the former of these cases, which was an action on a reinstated life insurance policy, it was held that the insurer was not entitled to an instruction to the jury to the effect that if the insured, in applying for a reinstatement, certified that his health was then good, and between that time and the time of reinstatement he had a derangement of health and did not disclose that fact to the company, the jury should return a verdict in its favor. It was held that such instruction was not proper because on the evidence the jury could properly find that although the contract of reinstatement was actually made on October 14, it was understood and intended by the parties to take effect by relation as of October 1, when the application and certificate for reinstatement were filed with the company, and could properly find that the whole contract was intended to be and was of October 1 and that it spoke from that date.

The *Moats* case, *supra,* involving the original issuance of a policy, rests on the same basis, because the premium was paid with the application and it was provided in the application and the policy that upon payment of the first premium and delivery of the policy in the lifetime of the insured, the policy should relate back and take effect as of date of the application.

The Supreme Court of the United States in *Stipcich* v. *Metropolitan Life Ins. Co.,* 277 U. S. 311, at 315, explained its decision in the *Higginbotham* case by saying: "Where the parties contract exclusively on the basis of conditions as they existed at the date of the application, the failure

of the insured to divulge any known changes in health may well not affect the policy." But this reasoning has no application in the instant case, because this court, in its former opinion, 53 R. I. at 340, held that, on the facts alleged in the bill, "The provision in the rider that the additional premium on the new rating should become effective December 8, 1931, had no effect on the time when the contract was made. . . . The offer to insure Wholey on a new basis was made on the assumption that the facts were as stated in the application. The representations made therein were continuing representations by the insured. . . . There was a duty on the part of Wholey to disclose any material change in the condition of his health occurring between the time when he made his application for reinstatement and the time of the acceptance of the risk by the insurer", citing the *Stipcich* case, *supra,* and other cases supporting its statement. The Superior Court, after the hearing on the merits, held to the same effect on the evidence, and, in our judgment, correctly, in view of the previous opinion of this court in this case.

It should be noticed also that even if the contract of reinstatement in the instant case had been made on the basis of the state of the insured's health at the time of his application, or on December 8, 1931, still the doctrine of the *Higginbotham* case would not operate to relieve the insured from the duty of disclosing to the company what happened to him on December 15, 1931. This is so because what happened then not merely was evidence of an *intervening change* in his health since the date of his application for reinstatement, but clearly and strongly indicated that his health had been seriously impaired *at that date.* It was surely his duty to disclose to the company anything which came to his knowledge between the making of his application and its acceptance and which thus indicated that the warranty of sound health in the application was untrue when he made it. On the theory of the respondents, that the insured's health on December 8, 1931, was

the vital thing, this case is quite different from a case in which the applicant's health became impaired *after* the making of the application, by reason of an accident or the contraction of a contagious disease, for example.

We find no support, in law or in fact, for the respondents' contention that the company, in reinstating the policy, assumed the risk that the insured then had had angina pectoris.

They also contend that before the policy was reinstated the insured had the right to elect to take paid-up extended insurance to a date which was after the date when he actually died, and that if a complainant is to have a right to a rescission of a contract by reason of fraud "it must restore the respondent, as far as possible, to the position which he occupied before the transaction which is sought to be rescinded", and that therefore the respondents here, as successors to the rights of the insured under the policy, are entitled to exercise the above-described right of election, which they contend that the insured had at the time of the lapse of the policy. A short, but conclusive, answer to this contention is that at the time of the lapse the insured had no such right of election.

The applicable provision of the policy comes just after the provision that in case of default in the payment of a premium the policy shall become effective automatically for paid-up insurance, according to a table of values set forth, and is as follows: "In lieu of such Paid-up Insurance, the Insured may, by written notice filed at the Home Office within the days of grace, elect to have this policy continued as Extended Insurance, payable as provided on the first page hereof, for the period stated in the table of values herein, and having a cash surrender value; or may procure the Cash Value on satisfactory release and surrender of this policy." The insured never filed any such notice, and under this provision he at no time after the lapse of his policy had any such right of election; and his application for a reinstatement was not made until after

the lapse, it being expressly provided in the defaulted promissory note that it was payable at the date stated, "without grace". The complainant has offered to pay and deliver to the respondents the net paid-up value of the policy at the time of the lapse, and all the consideration which it received from the insured after the lapse of the policy, and interest on the amounts of these items; and the decree appealed from provides for such payment and delivery, which is all that is required under the law of rescission for fraud.

One of the respondents contends that the complainant is barred by laches from maintaining this suit for cancellation, because it did not bring it before the death of the insured. But until after his death it did not have any notice of the facts upon which it based its suit and therefore it was not guilty of laches as contended.

The respondents urge that the decree should be reversed because of certain rulings by the Superior Court as to the admission of certain testimony. We find nothing in these rulings which should prevent us from affirming the decree.

The respondent beneficiary also contends that the decree should be reversed because of the refusal of the court to make, at her request, certain findings of fact. The court, as stated *supra,* made numerous findings of fact. We have also stated *supra,* in substance, that in our opinion some of these findings that are supported by the evidence make out a case for cancellation of the reinstatement, not deeming it necessary to consider others of these findings, none of which is inconsistent with the decree. The only statutory requirement is General Laws, 1923, Chap. 339, Sec. 29: "The justice of the superior court shall, if so requested at the hearing by either party, report the material facts found by him, otherwise such report shall be within the discretion of the justice." We cannot see that any of the requested findings that are supported by any evidence, and that are not at least substantially covered by the findings made, are material to the issues in the case

upon which we base this opinion or are in any way inconsistent with this opinion. We therefore find no merit in this contention.

It may be well to add that this opinion should be construed strictly in view of three considerations. The first is that the inferences of fact and conclusions of law pertinent to the facts stated in the first amended bill of complaint were determined by this court upon the previous hearing of this case, and under all the circumstances we feel that we cannot hold that these inferences and conclusions were not correctly drawn from the facts so stated.

The second consideration is that, after a full hearing upon the merits, the Superior Court filed a decision, which bears all the marks of careful preparation and deliberation and in which it was held that with one immaterial exception all of the facts alleged in the first amended bill were proved by the evidence and the same inferences of fact and conclusions of law were arrived at as had been stated by this court, and no facts were found that would be inconsistent with such inferences and conclusions.

The third consideration is that findings of fact by the justice before whom an equity case is heard should not be set aside unless they clearly fail to do justice between the parties,—*Simeone* v. *Antonelli,* 52 R. I. 41, 156 A. 799; *Dwyer* v. *Curria,* 52 R. I. 264, 160 A. 206—and we cannot say that the findings of fact in the instant case clearly fail to do justice between the parties.

Any future life insurance case the decision of which will depend upon whether it is governed by the rule of continuing representations applied in the *Stipcich* case, *supra,* or by the rule applied in the *Higginbotham* and *Moats* cases, *supra,* or upon whether the contract of insurance was made in one State or another, must be decided according to the evidence in that case upon such issue. But in the instant case our determination of these issues has been controlled by the above considerations.

The appeals are denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

FLYNN, C. J., and CONDON, J., dissent.

*Claude R. Branch, F. H. and E. K. Nash,* for complainant.

*Comstock & Canning, Andrew P. Quinn,* for Industrial Trust Company.

*Joseph E. Beagan, Robert P. Quinn,* for Elizabeth V. Wholey.