ELIZABETH V. WHOLEY *vs.* THE COLUMBIAN NATIONAL LIFE INSURANCE COMPANY.

JUNE 24, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. ‘ This is an action of the case in assumpsit on a contract of insurance on the life of Timothy V. Wholey, late of the city of Providence, deceased. The action is brought by his widow, Elizabeth V. Wholey, as sole beneficiary under said contract. The case was tried before a jury in the superior court and, at the conclusion of all the evidence, the trial justice directed a verdict for the defendant. The case is before us on exceptions of the plaintiff to this action of the court and to numerous rulings in the course of the trial.

The case was commenced by writ dated December 3, 1937. The plaintiff's declaration contains two special counts and the common counts, all for the same cause of action, as shown by her bill of particulars. The allegations of the special counts are, in substance, as follows: January 15, 1932, at Boston, Massachusetts, Timothy V. Wholey made with the defendant a contract of insurance on his life. The consideration for the contract was the payment by him of twenty-eight annual payments of $1803.03 each, the first such payment to be made on June 2, 1932, and the payment by him, in addition, of a proportionate part of that annual premium for the period from December 8, 1931 to June 2, 1932. On the basis of such premium, the defendant further agreed to insure his life from the 8th day of December 1931 to the 2d day of June 1932. Elizabeth V. Wholey, the wife

of the insured and the plaintiff here, was named as sole beneficiary under the contract. At her election she was to receive $250 per month for one hundred and twenty months from the death of the insured, or she was to receive upon his death $25,400, which sum represented the agreed commuted value of such insurance. These counts further allege that the insured, relying on these promises, paid the company a large sum of money; that he died on May 3, 1932, while the contract was in full force and effect; that on May 13, 1937, the plaintiff requested the company to forward to her the policy evidencing said contract, but that the company refused to do so and denied the existence of any such contract.

The defendant filed a plea of the general issue and also seven additional pleas, which, in one form or another, set up the defense that the rights of the plaintiff in respect to the contract of insurance declared upon in the instant case were fully determined in an equity suit brought by the defendant against her, individually and as executrix of the will of Timothy V. Wholey; that the equity suit and an action at law, which the plaintiff brought against the defendant while the equity suit was pending, were based on the same cause of action that is sued upon in the case at bar; that, in compliance with a final decree in the equity suit, the company paid to the plaintiff all sums due her in connection with any insurance or contract of insurance on the life of Timothy V. Wholey; that she received and accepted the same, thereby terminating all obligations of the company on account of any such insurance; that she discontinued her action at law by order of the court in the equity suit; and that neither she nor any one in her behalf made any request for a policy evidencing such insurance as she now sues for until after the equity suit was finally determined.

Plaintiff's answer by way of replication to the company's special pleas was, in effect, a specific denial that the cause of action in the equity suit was the same as the one in the

instant case; and further, that the action at law mentioned in certain pleas was brought by the plaintiff as trustee for the Industrial Trust Company, which was the absolute assignee of the insurance policy involved in the equity suit.

At the trial of the instant case, counsel for the plaintiff admitted that the only application made by Timothy V. Wholey for life insurance from the defendant, after his application for a life insurance policy that had lapsed before January 15, 1932 for nonpayment of the premium specified in that policy, was an application for the reinstatement of that policy. Whatever testimony the plaintiff and her witnesses gave or offered to give in support of the contract for insurance relied upon by her in this case was with reference to an application by him for a reinstatement of such lapsed policy and other documents in connection therewith.

Twenty-two exhibits were offered by her to prove her present claim, but all of them, with the exception of plaintiff's exhibit 1, which is a letter dated May 13, 1937 from her attorney to the company demanding a new policy, were excluded by the trial justice. The twenty-one exhibits that were excluded are numbered 2 to 22 "for identification." Excepting exhibits 7, 21 and 22, all such exhibits had been introduced in evidence in the equity suit. Exhibit 7 is a copy of the lapsed policy and attached documents, the originals of which were introduced in evidence in the equity suit; and exhibits 21 and 22 are unpaid premium notes which matured after the death of the insured and were returned to the plaintiff by the company. No other evidence was given or offered by the plaintiff in the instant case tending to show the existence of any contract for insurance except in connection with the lapsed policy.

The situation presented by the record before us requires a review of the equity suit and the previous action at law which, according to the defendant, are determinative of the instant case. The equity suit was twice before this court. *Columbian National Life Ins. Co.* v. *Industrial Trust Co.,* 53 R. I. 334, *Same* v. *Same,* 57 R. I. 325. The former action

at law is docketed as No. 89402 in the files of the superior court and never reached this court. The subpoenas in the equity suit, under date of July 22, 1932, were directed to Elizabeth V. Wholey, individually and as executrix of the will of Timothy V. Wholey, and to the Industrial Trust Company. The former action at law was brought against the insurance company by the present plaintiff, as trustee for the benefit of the Industrial Trust Company, by writ dated August 3, 1932.

In the equity suit, the insurance company prayed for the cancellation of a contract for the reinstatement of an existing life insurance policy which it had issued on the life of Timothy V. Wholey. The ground for such relief was material false representations by the insured as to the condition of his health at the time of the making of that contract. In that suit, the respondent Elizabeth V. Wholey demurred to the bill of complaint on the ground that Wholey's illness and his failure to disclose it were immaterial and constituted no defense to a recovery under the policy. The other respondent, the Industrial Trust Company, to which the policy in question had been assigned, as security for a debt, by the insured and by the sole beneficiary, Elizabeth V. Wholey, moved to dismiss the bill of complaint on the ground that the issue presented by the bill might be raised in the action at law which we have above mentioned. On the complainant's appeal from a decree sustaining the demurrer and granting the motion to dismiss, this court reversed the decree and held that: "The issue (fraud) is one over which equity and law have concurrent jurisdiction. The rule is general that a court of equity which has first properly taken jurisdiction of a cause cannot be ousted of its jurisdiction by a subsequent proceeding at law for the reason that the latter tribunal also has jurisdiction." *Columbian National Life Ins. Co.* v. *Industrial Trust Co.*, 53 R. I. 334, 342. This opinion was filed June 14, 1933.

While the equity suit was pending for decision on the points involved in the opinion just cited, the insurance com-

pany, as defendant in the then pending action at law, filed in that action a plea of the general issue and a number of special pleas, which set up the same facts in defense of that action as it had alleged as grounds for cancellation of the contract for reinstatement of the policy in its bill of complaint. It also filed a plea of tender and, on December 8, 1932, it deposited the sum of $942.17 with the clerk of the superior court, which sum, according to the company, represented all moneys legally due to the respondents upon cancellation of the policy. Following the opinion of this court of June 14, 1933 in the equity suit, a justice of the superior court entered an order staying the prosecution of the action at law until the equity suit was finally determined.

The equity suit then became the source of protracted litigation. In so far as the pleadings are concerned, we need only refer to the answer of the respondent Elizabeth V. Wholey. This answer admitted some of the allegations in the bill of complaint; it denied some others; and it left the complainant to its proof as to such allegations that were neither admitted nor denied. In no manner did she set forth in her answer that the contract which Timothy V. Wholey entered into with the company was a contract for new insurance rather than a contract for the reinstatement of the policy in question. Except for a statement of the basic facts in the equity suit, brevity compels us to refer to the opinion of this court in *Columbian National Life Ins. Co.* v. *Industrial Trust Co.,* 57 R. I. 325, for a full presentation of the facts in that suit.

The policy involved in the equity suit was issued to the insured on June 2, 1925. It provided for the payment of an annual premium of $1118.25 for thirty-five years. Under this policy, the beneficiary therein named was to receive $250 a month for one hundred twenty months, or the lump sum of $25,400, which was the commuted value of such insurance. The policy lapsed on October 24, 1931 for the nonpayment of premium notes. The reinstatement clause of the policy contained the provision that: "Should

this policy lapse, it may be reinstated at any time upon evidence of insurability satisfactory to the Company and payment of all past due premiums with interest at six per cent. per annum . . . ."

On November 12, 1931, the insured filled out and executed a printed form of application for reinstatement of the lapsed policy. In connection with this application the company had the insured examined by a physician, who reported that he then was overweight. The company further ascertained that while the policy was in force the insured, by dieting, had reduced an excessive weight and an elevated blood pressure. In view of these facts the company considered the insured an impaired risk and refused to reinstate the policy in accordance with the annual premium therein stated. However, on December 11, 1931, the company offered to reinstate the policy for its unexpired term of twenty-eight years "subject to Table D rating", which meant an annual premium of $1803.03 from June 2, 1932, provided that the insured paid for such reinstatement the sum of $1077.74 as accrued premium at the new rate from December 8, 1931 to June 2, 1932.

On or about January 5, 1932, the insured notified the company that he would pay the required sum of $1077.74 for a reinstatement of the policy at the new rate on condition that he could pay such sum in six monthly payments. The company accepted these terms and, on receipt at its home office in the city of Boston of a small amount in cash and of a series of notes signed by the insured, it sent him a rider, dated January 15, 1932, to be attached to the policy. This rider said: "In consideration of the reinstatement of this policy it is hereby provided and agreed that an extra annual premium shall be added to this policy based on Table D rating to become effective December 8, 1931." The rider also set out the amount of "the extra premium due from December 8, 1931 to June 2, 1932", the next premium date under the policy. In addition to this rider the company

also sent to the insured a premium receipt and the old unpaid premium notes.

The insured died May 3, 1932, from angina pectoris and myocarditis. In view of certain representations that the insured had made in his application for reinstatement of the policy, the company soon after his death made an investigation as to the truth of those representations and then instituted proceedings to cancel the policy. In this equity suit no claim was made by Elizabeth V. Wholey that the transaction was a contract for new insurance, separate and distinct from such policy. Her main contentions were as follows: One, that the insured did not believe that he had had angina pectoris, in spite of what happened to him prior to his application for reinstatement of the policy; and that therefore his failure to disclose it to the company was no ground for cancelling the reinstatement. Two, that the contract of reinstatement was made to take effect as of December 8, 1931, and that the applicant was under no duty to disclose anything with regard to his health that occurred after that date. Three, that before the policy was reinstated the insured had the right to elect to take paid-up extended insurance, and that, if the company was to have a right to rescind the contract of reinstatement, it was bound to give the respondent Elizabeth V. Wholey the right to such election. And four, that the company was barred by laches from maintaining its suit for cancellation, because it did not bring it before the death of the insured. These contentions were found to be without merit and the decree of the superior court ordering cancellation of the policy was affirmed by this court in its opinion of February 6, 1937. *Columbian National Life Ins. Co.* v. *Industrial Trust Co.,* 57 R. I. 325.

In compliance with the final decree in the equity suit, the then pending action at law, prosecution of which had been stayed until a final determination of such suit, was discontinued on March 15, 1937. A notation by the clerk of the superior court on page 6 of the company's pleas in

said law action shows that, on October 7, 1937, the sum of $942.17 was withdrawn from the registry of that court and that the receipt therefor was attached to the final decree in the equity suit. Appended to said decree there is an undated receipt, signed by the attorney for Elizabeth V. Wholey, acknowledging payment to him of the $942.17. This sum was thus withdrawn in compliance with the abovementioned decree.

There is merit in the defendant's contention that the plaintiff, having failed to set up her present claim as a defense in her answer in the equity suit, is now precluded from asserting such a claim. A litigant is not entitled to present a case piecemeal by taking clearly inconsistent positions. The facts and inferences upon which the plaintiff relies in the instant case were known to her when she filed her answer to the bill in equity. If, as she now claims, the transaction then in question was a contract for new insurance and not a new contract for the reinstatement of a lapsed policy, as she firmly contended in the equity suit, she could well have urged such claim as a defense in her answer in that suit. Having failed to allege such claim as a defense then, it must be deemed to be waived. A party defeated in one action cannot maintain a second action based on a ground which could properly have been, but was not, set forth and relied upon in the former action. See *Di Iorio* v. *Considine & Co., Inc.*, 54 R. I. 361; *Fraser* v. *Wright*, 54 R. I. 422; *Burns* v. *Burns*, 53 R. I. 324. However, in view of the protracted litigation between these parties, we deem it advisable to consider the case more fully than a strict application of that rule would warrant.

We have carefully read the transcript and all of plaintiff's exhibits herein previously described. Assuming, without deciding, that such exhibits were erroneously excluded by the trial justice, the record before us, including the contents of those exhibits, clearly shows that the fundamental facts upon which the plaintiff relies in the instant case are the

same as those in the equity suit. Having once stated them in this opinion, it would be idle to repeat them here.

The plaintiff's present contention, which is quite contrary to the one urged by her in the equity suit, is that upon the company's refusal to reinstate the policy "the parties continued further negotiations and finally entered into a new contract of insurance in January 1932 at Boston, Massachusetts and agreed that such insurance should date back to December 8, 1931 the annual premium rate of $1803.03 being payable in June of each year and a proportional part of such annual rate to be paid from December 8, 1931 to June 1932. It was also agreed that such annual premium could be paid in monthly installments." She therefore concludes that "a contract of insurance on which the premium was $1803.03 was in law and fact an entirely new and different contract from a contract on which the premium was $1118.25," namely, the contract evidenced by the lapsed policy.

It is fundamental that a contract should be so construed as to give a lawful and effective meaning to the intention of the parties as gathered from the attending circumstances. Under this rule the determinative question in the instant case is whether the object of the contract, which Timothy V. Wholey and not the plaintiff here made with the company, was to reinstate the lapsed policy or to buy entirely new insurance. It is his intention and not hers that controls.

The plaintiff now strongly relies upon two letters from the company's Providence agent to its assistant actuary in Boston, and one from the latter to the former. These letters, which are plaintiff's exhibits 2, 3 and 4 for identification, are dated December 21 and 23, 1931, and January 5, 1932. All of them clearly refer to policy "#143356", which is the lapsed policy, and, as already stated, were in evidence in the equity suit.

In exhibit 2 the company's Providence agent, after acknowledging receipt of a letter from the assistant actuary "outlining figures for the *reinstatement* of the above policy",

asks for further details concerning those figures and also asks whether the increased premium demanded by the company for such reinstatement "is as of the attained age of the insured or is it at the age the policy was written at?" (italics ours)

In exhibit 3 the assistant actuary gives the requested information and says that "the annual extra premium is taken at the attained age of the insured". In exhibit 4 the Providence agent acknowledges receipt of the last-mentioned letter "regarding the *reinstatement* of the above policy", and notifies the assistant actuary that the insured had agreed to pay the premium then due at the increased rate "providing that it can be paid in six monthly payments; the first payment to be due January 15th". (italics ours) Basing her argument mainly upon these letters, the plaintiff argues that "without taking up individually all the exhibits for identification which were refused admittance as evidence . . . there could be no clearer proof of the creation and existence of the contract sued upon than these three letters show".

The weakness of this argument is twofold. First, it misconceives the true import of those letters, which were written for the purpose of reinstating the lapsed policy and not with the object of writing new insurance. Secondly, it treats those letters as independent documents, when as a matter of fact they are necessary but minor links in a chain of circumstances, which must be considered as a whole in order to effect the object that the parties actually intended to accomplish by the contract.

The conclusion that the plaintiff draws in such general terms from the above-mentioned letters fails to take into consideration that, on November 12, 1931, Timothy V. Wholey signed a printed application furnished by the company applying "for the reinstatement or placing in force of the policy or policies listed below, . . . Policy No. 143356— Amount of Insurance 24,500 . . ."; that following such application the company refused to reinstate that policy in accordance with the premium therein fixed because of his then

condition of health; that further negotiations were had with such object in view until December 11, 1931, when the company offered to reinstate the policy at an increased rate; and that still further negotiations, including the letters upon which the plaintiff now so strongly relies, culminated in an agreement whereby Wholey agreed to accept a reinstatement of the lapsed policy at the increased rate, subject to certain conditions as to the payment of the then due premium at that rate, which he requested and the company accepted.

The agreement, as consummated, is evidenced by the rider of January 15, 1932, which we described earlier in this opinion. A photostatic copy of this rider and such a copy of Wholey's application of November 12, 1931 for reinstatement of policy #143356 are attached to the copy of that policy, which the plaintiff offered in evidence as exhibit 7 for identification.

It is urged by the plaintiff that when the company refused to reinstate the policy in accordance with its terms, Wholey was free to buy new insurance in the open market at his attained age, and that instead of so doing he chose to secure such insurance at that rate with the defendant company. This is a fallacious argument. The plain answer to it is that there is no evidence even remotely tending to show that Wholey ever sought to secure any new insurance from this or any other company; and, further, that such a construction of the contract under consideration would disregard his entire course of conduct in the premises. Since he decided for himself what he deemed best for his own interests in the circumstances confronting him in 1931, and as his decision is evidenced by subsequent unequivocal conduct on his part, there is now no room for others to conjecture or speculate as to what he might otherwise have done.

Under our well-established rule, the evidence and the reasonable inferences therefrom are to be construed most favorably to the plaintiff on defendant's motion for a directed verdict. Applying this rule in the instant case, we are clearly of the opinion that, as a matter of fact, the object of

the contract under consideration was the reinstatement of the lapsed policy, with premiums at an increased rate, and not a contract for new insurance, as the plaintiff alleges in this case. This same view of the contract was expressed by this court in its two opinions in the equity suit hereinbefore discussed.

The plaintiff, however, contends that, under all circumstances and as a matter of law, a contract for the reinstatement of a lapsed policy at a premium rate greater than the one fixed in such policy is not a contract for the reinstatement of that particular policy but a contract for new insurance. With the exception of a statement which she quotes in her brief from *Sussex* v. *Aetna Life Assurance Co.*, 33 D. L. R. 549, without reference to its context or the facts in that case, the plaintiff has cited no authority in support of the all-inclusive rule of law for which she contends, and we have found none.

The *Sussex* case, which was decided in 1917 while the first World War was in progress, is clearly distinguishable in its facts from the instant case. There the insurer arbitrarily refused to reinstate a lapsed policy, except on condition that should the insured enter any military or naval service outside of the Dominion of Canada, he would agree to pay an extra annual premium of $50 per thousand of insurance, notwithstanding the express provision in the policy that it contained no restrictions regarding change of occupation, residence, travel or service in the militia or army or navy in time of war or in time of peace.

In this situation, we believe that the court was fully justified in rejecting defendant's contention by saying that what would be done under the company's offer "would be to issue an entirely new policy insuring the respondent at a different and higher rate." It is a palpable distortion of the court's language to say that it was then stating a general rule of law which was applicable in all cases and under all circumstances involving the reinstatement of a lapsed policy.

When, in the instant case, the company refused to rein-

state the lapsed policy in accordance with its terms, Wholey, a business man of experience, might well have sought the assistance of the law, as did the insured in the *Sussex* case, if he believed that the company's refusal was improper or arbitrary. But instead of invoking such aid, he saw fit to attain his main object, namely, the reinstatement of the lapsed policy, even though at an increased rate of premiums, by negotiations which led to the contract in question. There is nothing unlawful in such a contract. He having knowingly entered into a contract which, if validly obtained by him, would have accomplished his main purpose, it is not now within the power of the beneficiary to have that contract treated as a radically different one.

Upon a careful examination of all the facts and circumstances disclosed by the record before us, we are of the opinion that, even with the evidence offered by the plaintiff and excluded by the trial justice, there was no competent evidence to support a contract for new insurance, as set forth in plaintiff's declaration. In the circumstances, the direction of a verdict for the defendant was without error.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict as directed.

FLYNN, C. J., dissents.

CONDON, J., dissenting. I think that the case at bar and the equity suit are different causes of action. It is, therefore, immaterial what issues were involved in the equity suit provided that the issue mainly involved in the case at bar was not passed upon in such suit. "The doctrine of *res adjudicata* does not apply to a subsequent proceeding based on a different cause of action unless the issues therein were both involved and passed upon in the former proceeding." *Matteodo* v. *Pesce,* 68 R. I. 188, 27 A. 2d 109, 111.

Now it is quite proper to inquire in what respect the case at bar differs from the equity suit. That question may be answered, in my opinion, by briefly stating the gist of each case. In the equity suit the complainant assumed in its bill

. that its negotiations with the insured were directed toward a reinstatement of the policy which had lapsed and that such negotiations had resulted in a reinstatement. On this assumption it went on to allege that such reinstatement was voidable because it had been procured by fraud in that the insured had concealed a material change in the condition of his health. The main issue, therefore, was whether the insured was guilty of fraud in the procurement of what the complainant assumed to be a reinstatement of the lapsed policy. Whatever other issues arose at the hearing of the suit were plainly subsidiary.

The true nature of complainant's cause of action in that suit is, perhaps, nowhere, in the whole history of this protracted litigation, better illustrated than in the opinion of this court in 53 R. I. 334. There the court reversed a decree of the superior court sustaining a demurrer to, and a motion to dismiss, complainant's bill. "The demurrer to the bill", this court said, "is based on the ground that Wholey's illness and his failure to disclose it were immaterial and constituted no defense to a recovery under the policy." And it further said that the motion to dismiss was "on the ground that the issue in this case might be raised in the law action and that it was one which, under the statute, must be determined by a jury." It then summarized the questions thus raised as follows: (1) "Is the reinstatement of the policy voidable? (2) Has equity jurisdiction to cancel the reinstatement?"

Thus the court assumed, but it was not called upon to decide, that there had been a reinstatement, and that the cause of action was one alleging fraud in its procurement. That the court confined itself to a consideration of those grounds is clearly evident from the language of its decision as follows: " . . . we hold that this reinstatement contract was voidable at the option of the insurer and that equity has jurisdiction of the cause." The case was thereupon remanded to the superior court for trial on the only issue remaining, namely, was the insured guilty of fraud? That issue was tried in the superior court and resulted in the entry of a

decree in that court in favor of the complainant, which was upheld here in 57 R. I. 325. Nothing that was said therein changed, or could change the case into one involving anything more than a single issue of fraud in the negotiations for a contract of insurance, which was assumed by the complainant to be a reinstatement of the lapsed policy.

The case at bar, on the other hand, does not assume that there was any reinstatement of a lapsed policy. Plaintiff's declaration is laid on the ground that the refusal of the insurer to reinstate the policy, in accordance with its terms, at the premium named therein precluded the idea of a reinstatement as a matter of law, and that the later meeting of the minds of the insured and the insurer on January 15, 1932 resulted in a new contract of insurance in consideration of a new and higher premium based upon insured's attained age at that time. The gist of this action was, therefore, an alleged independent contract, not dependent upon the continued existence of any prior contract nor derivative thereof, as was the assumed reinstatement before the court in the equity suit.

The fact that plaintiff, who was a respondent in the equity suit, did not contend in such suit that the agreement was a new contract of insurance and not a reinstatement of the lapsed policy seems to me to be of no consequence. In this respect her position is no different from that of one of the petitioners in *Merrill* v. *Boal,* 47 R. I. 274, 285, against whom a plea of estoppel based on *res adjudicata* was raised because she had, in a former proceeding touching the same subject matter, made a contention inconsistent with the one that she was then making in the case before the court, and which was decided against her. This court held that there was no estoppel, saying: "While a person who has gained an advantage in one suit by having his contentions upheld is sometimes estopped in another case from asserting the opposite to his former claim. a person is always permitted to change his contention when he finds his former position untenable."

The rule against splitting causes of action does not seem to me to be applicable here even in connection with the principle of *res adjudicata*. That rule exists mainly for the protection of the defendant and rests on reasons of public policy. It did not have its origin in law but arose in equity; yet it is not always strictly applied there. In special circumstances it has been waived to avoid injustice, and it does not prevent an unsuccessful party from bringing suit a second time on a new theory. 1 C. J. S. 1306-1310.

Different causes of action may arise out of the same set of facts or circumstances. See *Matteodo* v. *Pesce, supra;* and also the following comparatively recent cases from other jurisdictions: *Susi* v. *Davis,* 133 Me. 354 and 134 Me. 308; *Phillips* v. *Phillips,* 119 N. J. Eq. 497; *Martin* v. *City of Asbury Park,* 114 N. J. L. 298; *Mitchell* v. *Mitchell,* 136 Me. 406; *Robertson* v. *Robertson,* 117 N. J. L. 607.

Two causes of action are identical for the purpose of applying the doctrine of *res adjudicata* only if the same evidence will support either action, or, as stated in 2 Freeman on Judgments, § 687, p. 1447: ". . . the judgment in the former action will be a bar, provided the evidence necessary to sustain the judgment for the plaintiff in the present action would have authorized a judgment for him in the former." If we apply this language to a successful plaintiff in the prior case, who is a defendant in the second case, it is obvious that, on the record here, the defendant insurer cannot prevail on the evidence on which a decree in its favor was obtained in the equity suit. There it was distinctly held that the insurer was not obliged to show either that the alleged misrepresentation was made by the insured with intent to defraud or that the subject of it contributed to the death of the insured. In the case at bar it is not denied that the burden of proving at least one of those elements is vital to the insurer's defense. Furthermore, it is necessary for it to meet the issue of whether a new contract of insurance was entered into on January 15, 1932, which was not controverted in the equity suit.

The real difference existing between these causes of action could be elaborated upon further, but enough has been said to make clear wherein I think such difference exists. I might add that in laying down the premises upon which my conclusion rests I have, of course, assumed for the purpose of this discussion that, in law, there is no reinstatement of insurance where a new and higher rate of premium, based on the attained age of the insured at the time of the reinstatement, is demanded by the insurer before consenting to such reinstatement. A reinstatement presupposes that the policy, without change in terms or conditions, may be revived upon proof by the insurer of the required state of health to establish insurability. Such a right to revive the policy is unilateral and exists independently of a new contract. The insurer must reinstate the lapsed policy if the insured complies with the condition for reinstatement set out in the policy. In other words, the right of reinstatement has its source in the original contract and not in any so-called *new contract of reinstatement*. This court in *Columbian National Life Ins. Co. v. Industrial Trust Co.*, 53 R. I. 334, 341, recognized this difference when it said, "the reinstatement of insurance was in reality a new contract." But the court was not therein called upon, in considering and deciding the questions then before it, to make any application of this distinction, and it did not.

Because of the view expressed in the preceding paragraph, I cannot agree with the majority that *Sussex* v. *Aetna Life Assurance Co.*, 33 D. L. R. 549, is not authority for the plaintiff's contention "that where there is a different and higher rate of insurance there is no reinstatement but a new contract of insurance." I think that case is authority for such a proposition. The policy involved therein provided a right of reinstatement. The insured sought to avail himself of such right. He met the condition precedent to the enjoyment of such right by establishing insurability, but the insurer refused to consent to reinstatement except at a higher rate, because the insured was a soldier and war had been declared.

The court rejected the insurer's claim of right to require the insured to pay a higher rate and compelled it to reinstate the policy at the old rate, that is, in accordance with the original contract of insurance as evidenced by the policy. In doing so it bluntly stated that the company's insistence upon a higher rate because of changed conditions of war and insured's change of occupation to that of a soldier, events not guarded against in the original contract, "would be to issue an entirely new policy insuring the respondent at a different and higher rate."

The essence of that decision is that the insurer was required to reinstate the policy in accordance with the terms of its contract with the insured, as set forth in the policy, and that to require him to agree to pay a higher rate would be such a departure from those terms as to amount to a new contract. That decision, of course, does not stand for the proposition that the insured could not, if he wished, enter into such a new contract. But in such case, though the parties themselves called their new agreement a reinstatement, it would not, in law, be a reinstatement of the old contract of insurance, but a new contract. That is the limit of the contention which I understand the plaintiff is making here. And she is applying the ruling principle of the cited case as a rule of construction or interpretation in order to determine the legal relationship existing between her insured and the insurer after the consummation of their negotiations into the agreement of January 15, 1932; not what the insurer called it, nor even what the insured supposed it to be, but what it actually was in contemplation of law.

For the reasons stated, I think the plaintiff's exception to the granting of the defendant's motion for a directed verdict should be sustained. Technically a directed verdict was not the proper method for obtaining a decision on the issue of *res adjudicata*. That should have come by way of a ruling by the trial justice on the plaintiff's replications to the defendant's special pleas in which that defense was set up as a matter of record, since there was thus raised an issue of law

for the court to decide. *Fitz-Simon* v. *Fitz-Simon,* 29 R. I. 358. Strictly speaking, there was no room for a verdict on such an issue. Only if the special pleas had been overruled and the case had proceeded to trial under the general issue would a motion for a directed verdict have been legally and logically in order. What the trial justice did was, in effect, to overrule the replications and sustain the pleas. I think that on this record he was in error. In my opinion, the plaintiff's replications should be sustained, the defendant's special pleas overruled, and the case remitted to the superior court for further proceedings.

### On Motion for Reargument.

Per Curiam. After our opinion in this case was filed, the plaintiff, by leave of court, filed a motion for reargument. Later she filed a memorandum setting forth in detail the reasons for such motion. With one exception, the reasons advanced by the plaintiff in support of her motion are, in substance, identical with those already urged by her in this case. Excluding the exception, these reasons present for our consideration no contention which has not already been considered by us and dealt with in our opinion.

The above-mentioned exception is a claim that the construction given to the contract by this court violates the due process clause of the fourteenth amendment of the United States constitution, by which, according to the plaintiff, "a state is prevented from impairing or destroying the right of its own residents and the residents of other states to enter into contracts outside of it, and from impairing, destroying or enlarging rights and obligations arising under such contracts."

This contention is without merit for two reasons, either of which is sufficient in itself to deny the contention. In the first place, this is the first time that such an issue has been raised and presented in this case. Therefore, the question that the plaintiff now seeks to raise is clearly not a proper ground upon which to base a motion for reargument. Secondly, assuming that the question were before us for consideration,

there is nothing in this case that in any way raises the constitutional question now urged by the plaintiff. The decisive issue in the case was the determination of the contract which the insured made with the defendant insurance company. In our judgment, the due process clause of the fourteenth amendment to the United States constitution does not apply in the circumstances of this case. We therefore find no reason for granting the plaintiff's motion for reargument.

Motion denied.