DECISION
This matter was heard by the Court, sitting without a jury, on July 12-13, 2001. Officers John Lamantia, Melody Cassel, and Raymond Angell, III (individually "Plaintiff" and collectively "Plaintiffs") seek recision of an oral agreement or, in the alternative, damages for breach of contract, and a declaration of their rights with respect to the Law Enforcement Officers' Bill of Rights. The City of Cranston ("Defendant") filed an R.C.P. 50 motion for judgment as a matter of law on which the Court reserved judgment. Judgment is herein rendered.
 FACTS AND TRAVEL
On December 15, 1988, Plaintiffs, members of the Cranston Police Department, were advised that they were under investigation for obtaining money under false pretenses. At that time, they were suspended with pay pending a Grand Jury investigation. On February 10, 1989, a Providence County Grand Jury returned a multi-count indictment against all three Plaintiffs. The Plaintiffs were then suspended without pay under the Law Enforcement Officer's Bill of Rights ("Bill of Rights").
As the criminal case progressed, it was decided between the Attorney General and Chief of Police Kenneth Mancuso that the matter of the criminal charges should be handled by the police department in a Bill of Rights hearing. Chief Mancuso and the Plaintiffs' criminal attorneys met on April 16, 1990 and agreed to this arrangement. The department issued its charges on May 23, 1990, and the State charges were dismissed on June 29, 1990, in accordance with the parties' agreement.
While preparations were taking place for the Bill of Rights hearing tentatively set for mid-September of 1990, an agreement was reached between the City and the Plaintiffs' attorney, Malcolm Najarian, for the Plaintiffs to return to work. The terms of the agreement were that the Plaintiffs would return to work with no back pay, benefits, or credit for service toward their pensions. This agreement was never documented in writing.
On September 18, 1990, Malcolm Najarian faxed to Captain McAteer of the Cranston Police Department a proposed settlement agreement that incorporated terms not included in the oral agreement with Chief Mancuso. Because of this discrepancy, the proposed settlement agreement of September 18th was never signed. Without a signed agreement, the Plaintiffs returned to work on September 21, 1990.
In the six months to a year after his return to the police department, Plaintiff Lamantia testified that he followed up two or three times to determine whether a written agreement, including Plaintiffs' desired terms, was forthcoming. (Lamantia Dep. p. 67 at 1-21). He was unsuccessful and, after that time, no further attempts were made to ascertain the existence of a signed written agreement.
In the summer of 1996, approximately six years after returning to work, Plaintiff Cassel checked her personnel file and noticed that she had not been given pension credit during her 19 month suspension period without pay. She notified Plaintiffs Lamantia and Angell, who discovered the same omission in their personnel files. The Plaintiffs filed a grievance alleging a violation of their Collective Bargaining Agreement ("CBA") and of their agreement with the City regarding their return to work after suspension.
The arbitration was held on March 3, 1997 and heard by a three-member panel. The issue stipulated by Plaintiffs and the City was "Did the employer violate the terms of the parties' collective bargaining agreement when it failed to credit the grievants with active service for the time period of February 10, 1989 through September 21, 1990? If so, what shall the remedy be?" (Arb. Decision at 1.) On May 27, 1997, the arbitration panel issued its unanimous decision that the City had not violated the terms of the CBA by failing to give pension credit to the Plaintiffs during the 19 months they were suspended.
Plaintiffs did not appeal the arbitrator's decision but filed the instant lawsuit. The trial without a jury lasted for one day and a half. At the conclusion of the trial, the Defendant made a motion for judgment as a matter of law on the grounds of res judicata, collateral estoppel, and the election of remedies doctrine. Defendant argued that the arbitration panel, acting at the Plaintiffs' request, had already decided that the Plaintiffs were not entitled to credit for their pensions during the time of their suspension without pay, thereby precluding this Court from deciding on that issue. Plaintiffs argue that the claims for recision of the oral agreement, back pay, breach of contract, and other relief were not previously litigated and therefore should be heard and decided by this Court.
 STANDARD OF REVIEW
In a non-jury trial, "the trial justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences." Id. "The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks, 667 A.2d 1250, 1251 (R.I. 1995).
If, during the course of a trial, a court considers a motion for judgment as a matter of law, "[t]he proof and the inferences reasonably to be drawn therefrom must be assayed in the light most favorable to the nonmovants, free from any questions of credibility, but without the benefit of any inferences based on conjecture, speculation, or surmise." Long v. Atlantic PBS, Inc., 681 A.2d 249, 252 (R.I. 1996). "A verdict should be directed when the evidence authorizes only one legitimate conclusion in regard to the outcome." Id.
 ELECTION OF REMEDIES DOCTRINE
Defendant argues that Plaintiffs are barred from seeking a more favorable judgment from this Court on the same issues already decided in the arbitration proceeding under the election of remedies doctrine. Plaintiffs argue that their claims cannot be barred by the election of remedies doctrine because the arbitration panel did not reach the issue of back pay and did not have the jurisdiction to reach the equitable remedy of recision.
"When one party to a CBA attempts to take advantage of the grievance procedure and loses, the election of remedies doctrine prohibits that party from pursuing the same dispute in the courts of this state." Cipolla v. R.I. College, Bd. Of Governors for Higher Educ., 742 A.2d 277, 281 (R.I. 1999) (citing City of Pawtucket v. Pawtucket Lodge No. 4,545 A.2d 499, 502-503 (R.I. 1988)). It is undisputed that the Plaintiffs filed a grievance and that they received additional review from the arbitration panel. In the arbitration proceeding, both parties stipulated to the issue to be decided by the panel. That issue was whether the Defendant violated the CBA when it failed to credit the Plaintiffs with active service for the time that they were suspended without pay. Included as part of the discussion of this larger issue, the panel discussed the Plaintiffs' entitlement to back pay, considering the language of the CBA and the testimony concerning the oral agreement. The panel unanimously found that the Defendant did not violate the CBA. It also weighed the evidence of the special agreement made before the Plaintiffs' return to work and construed that agreement in the Defendant's favor. Plaintiffs chose their forum, stipulated to the issue to be decided, and received their remedy. This Court finds that the issues in the instant case are essentially the same as those heard in the arbitration. The election of remedies doctrine prohibits these Plaintiffs from now pursuing the same claims in Superior Court.
 RES JUDICATA
In moving for judgment as a matter of law, Defendant further argues that the Plaintiffs are barred from bringing this case because these same parties and issues were finally and definitively, in fact, unanimously decided in the earlier arbitration proceeding. Alternatively, the Plaintiffs assert that their claim in this case, recision of the oral agreement, was never addressed by the arbitrators, and therefore, there is no identity of issues that would trigger res judicata.
"[T]he doctrine of res judicata operates as an absolute bar to a subsequent cause of action when there exist the following: (1) identity of parties, (2) identity of issues, and (3) finality of judgment in an earlier action." E.W. Audet Sons, Inc. v. Fireman's Fund Ins. Co. of Newark, N.J., 635 A.2d 1181, 1186 (R.I. 1994) (citing Gaudreau v. Blasbalg, 618 A.2d 1272, 1275 (R.I. 1993)). Furthermore, "[a] party defeated in one action cannot maintain a second action based on a ground which could properly have been, but was not, set forth and relied upon in the former action." ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996) (quoting Wholey v. Columbian National Life Insurance Co., 69 R.I. 254, 262, 32 A.2d 791, 795 (1943)).
The parties involved in this action are Officers Cassel, Lamantia, Angell and the City of Cranston. These are the same as those involved in the prior arbitration proceedings. Therefore, the first element of the res judicata test is satisfied.
The second element, identity of issues, is also fulfilled. While the issues in this case have been presented by Plaintiffs as different from those decided in the arbitration, they are essentially the same. At the core of this litigation is whether the Defendant violated the CBA by failing to credit the Plaintiffs with active service during the time of their suspension and whether the Defendant fulfilled its alleged promises after the Plaintiffs returned to work. Both of these issues were addressed by the arbitrators and decided in Defendant's favor. Specifically, in discussing the promises, the arbitrators relied on the testimony of City Solicitor Steven Moretti, who recalled making an oral agreement with Najarian that the Plaintiffs would return to work, receive no back pay, and no pension credit. (Arb. Decision at 12.) Plaintiffs admitted that they had never spoken with their attorney about pension credit and that they did not know the substance of his discussions with City officials. Id. There are no issues of material fact revolving around the credit toward Plaintiffs' pensions that remain in dispute in this case as they have been definitively decided by the arbitration panel.
The final element required for a finding of res judicata is that the previous judgment be final and binding. The arbitration panel's decision is final and binding for two reasons: the Plaintiffs chose not to appeal that decision, and according to The City of Cranston Police Department Contract, § 23B at 32, "[a]ny decision handed down by a majority of the Arbitration Board shall be final and binding upon the parties hereto." The finality and binding nature of the arbitration panel's decision is undisputed. This Court also notes that this decision was unanimous.
The fact that Plaintiffs now seek relief through an equitable remedy does not alter the fact that the essential issue of the oral agreement has been heard and decided. Plaintiffs argue that their claims must be heard by this Court because they seek recision of the agreement. Defendant has argued that the issues relating to the agreement have been decided and are barred no matter what term the Plaintiffs are now using to describe their claims. Relitigation of the same issue in another court is barred by res judicata "without regard to the remedy that may be sought" in the second litigation. Corbin on Contracts, 5A § 1217 at 449. It is irrelevant that Plaintiffs are now seeking recision as their remedy for Defendant's alleged failure to perform; their claims in this litigation are barred. Moreover, because recision is a ground which could have been raised in the arbitration action and was not, Plaintiffs are further barred from litigating it in this Court. ElGabri, 681 A.2d at 275.
 COLLATERAL ESTOPPEL
Alternatively, Defendant argues that collateral estoppel would apply to the issues raised again by the Plaintiffs which have been decided by the arbitrators, namely, the terms of the oral agreement particularly as they relate to pension credits. Plaintiffs did not fully address this argument in their concluding memorandum. However, to succeed in this argument, Plaintiffs must demonstrate that the issues they present before this Court are different from those in the prior proceeding.
The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970). Its requirements are "(1) that there be an identity of issues, (2) that the prior proceeding resulted in a final judgment on the merits, and (3) that the party against whom collateral estoppel is asserted be the same as or in privity with a party in the prior proceeding." State v. Chase, 588 A.2d 120, 122 (R.I. 1991); E.W. Audet Sons, Inc., 635 A.2d at 1186.
As earlier determined, the parties and issues are the same here as those before the arbitration panel, and the arbitrators' decision was final and on the merits. The Plaintiffs' claims have been heard and thus are barred from being reconsidered by this Court.
 RECISION OF THE CONTRACT
Plaintiffs also request recision of the oral agreement with the Defendant. They argue that their entitlement to recision is twofold: Captain McAteer's refusal to sign the agreement "is an indication of doubt on behalf of the City of Cranston to perform the obligations of the contract . . .," and the oral agreement to give up back pay was void because the Defendant could not ask the Plaintiffs to waive their rights to back pay. (Amended Complaint at ¶ 14.)
Because this Court heard this case without a jury, it has considered the credibility of witnesses who testified. See Sparks, 667 A.2d at 1251. Eleven years have passed since the Plaintiffs returned to work after their suspension. While it is understandable that memories fade and recollection of detail becomes more difficult as the years pass, this Court notes the discrepancies in the Plaintiffs' testimony about the oral agreement at this proceeding as compared to their testimony at the time of the arbitration and during discovery. Plaintiffs' version of negotiations with their attorney and members of the Cranston Police Department has been inconsistent with respect to the arbitration, the deposition, and this trial.
Plaintiffs rely on Exhibits 13 and 14 in their effort to justify recision by showing the Defendant's failure to perform. These two exhibits — "Proposed Settlement Agreements," detailing the Plaintiffs' terms for their return to work — were faxed to Captain McAteer at the Cranston Police Department from Attorney Najarian's office. Plaintiffs argue that Captain McAteer's failure to sign and return the agreement evidences Defendant's material breach of the oral agreement. Defendant responds that Najarian's proposals were simply attempts to get more for his clients than the City orally agreed to give, and that they were rejected by the City.
Plaintiffs further rely on Rhode Isl. Five v. Med. Assoc. Of Bristol in their discussion of recision. Their reliance is misplaced. A valid contract with mutuality of agreement and obligation and an intent to be bound are required before recision can be considered as a remedy for failed performance. Rhode Isl. Five v. Med. Assoc. Of Bristol,668 A.2d 1250, 1253 (R.I. 1996). Clearly, there was no mutuality of agreement, obligation, or intent to be bound to the proposed settlement agreement in this case. Defendant was not the only party that did not sign the agreement; none of the Plaintiffs signed it either. Plaintiffs knew, upon their return to work, that a written agreement expressing their terms had not been executed by Defendant. Therefore, the Plaintiffs are not entitled to recision of the oral agreement as memorialized in Exhibits 13 and 14 because the agreement did not constitute a valid contract.
With respect to recision, the Plaintiffs additionally contend that they were entitled to back pay under the Bill of Rights after their "acquittal" of all charges by the Attorney General. Essentially, they argue that they could not enter into an agreement to waive their right to back pay. Citing our Supreme Court in McGee v. Stone, Defendant argues that Plaintiffs can make an agreement to waive their rights under the Bill of Rights. McGee, 522 A.2d 211 (R.I. 1987).
The parties agree that the issue of whether Plaintiffs could and did waive the payment of back pay was not discussed in the prior arbitration proceeding. This issue will accordingly be reviewed here de novo. Plaintiffs argue that the dismissal of the State charges constituted an acquittal which would entitle them to immediate payment of back pay according to the Bill of Rights. This Court finds this argument to be without merit. The Attorney General dismissed the criminal charges against the Plaintiffs with the knowledge that the matters would continue to be pursued by the department in a Bill of Rights hearing format. As part of their settlement in lieu of the hearing, Plaintiffs agreed to waive their claim to back pay, and thus they were not entitled to automatic and immediate payment of back pay upon their return to work.
Defendant cites McGee v. Stone in support of its contention that the Plaintiffs can agree to waive their claims to back pay and ratify that waiver by returning to work and performing their job duties. The plaintiff in McGee waived his right to a Bill of Rights hearing and accepted the settlement offered by his employer, choosing to return to his employment as a State Trooper on a probationary basis. Our Supreme Court found that "[t]he terms of the waiver, which plaintiff accepted through his subsequent performance, constituted punishment imposed for the crimes . . ." and therefore, that plaintiff could and did waive his right to a hearing. Id. at 215.
As part of their settlement with the City, the Plaintiffs in this case waived the payment of back pay in exchange for the dismissal of departmental charges. The City dropped the charges, and the Plaintiffs returned to work with the knowledge that they would not receive back wages. Through the subsequent resumption of their regular job duties, the Plaintiffs ratified their waiver of payment of back pay. Our Supreme Court in McGee has ruled that law enforcement personnel can agree to waive their rights provided by the Bill of Rights as part of a settlement with their employer. "The settlement reached under the terms of the waiver is as conclusive of the parties' rights as is a judgment that terminates the litigation between them." Id. Therefore, as a matter of law, Plaintiffs are not entitled to back pay withheld during the time of their suspension because they waived their rights to it.
 CONCLUSION
The evidence in this case leads this Court to "only one legitimate conclusion in regard to the outcome." Long, 681 A.2d at 252. This Court is satisfied from its review of the trial evidence that Defendant is entitled to a judgment as a matter of law. The Defendant's Rule 50 motion is granted on the grounds of res judicata, collateral estoppel, and election of remedies. As for the issue of entitlement to back pay, judgment enters for Defendant.
Counsel shall submit an appropriate order for entry.